**S. BRAVO SYSTEMS, INC.,**
**Plaintiff–Appellant,**

v.

**CONTAINMENT TECHNOLOGIES CORPORATION, Defendant–Appellee.**

**S. BRAVO SYSTEMS, INC.,**
**Plaintiff–Appellee,**

v.

**CONTAINMENT TECHNOLOGIES CORPORATION, Defendant–Appellant.**

**Nos. 95–1277, 95–1331.**

United States Court of Appeals, Federal Circuit.

Sept. 19, 1996.

Anton M. Rosandic, Benice & Associates, a Professional Corporation, Irvine, California, argued, for plaintiff-appellee.

Gregory B. Wood, Merchant, Gould, Smith, Edell, Welter & Schmidt, Los Angeles, California, argued, for defendant-appellant. With him on the brief was Victor G. Cooper.

Before ARCHER, Chief Judge, NIES,* Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

In these consolidated appeals, we address whether sanctions should be imposed against plaintiff S. Bravo Systems, Inc. (Bravo) under Rule 11, Fed.R.Civ.P., and Rule 38, Fed. R.App.P. The first case, appeal No. 95–1331, is the appeal of defendant Container Technologies Corporation (CTC) from the district court's order denying its motion for Rule 11 sanctions. We vacate the district court's order and remand for further consideration of CTC's motion. The second case, appeal No. 95–1277, is Bravo's appeal from the district court's order granting summary judgment in CTC's favor on all claims. We previously affirmed the district court's summary judgment order, but we left open CTC's request for Rule 38 sanctions against Bravo for filing and arguing a frivolous appeal. Having considered Bravo's response to CTC's request, we hold that Bravo's appeal was frivolous, and we therefore impose damages against Bravo under Rule 38 in the amount of the attorneys' fees reasonably expended by CTC to defend the district court's summary judgment order on appeal.

I

Bravo and CTC manufacture and sell secondary containment systems, devices that are placed under gasoline pumps to catch fuel that leaks or spills from the pumps. Bravo owns U.S. Patent No. 5,100,024 (the '024 patent), which claims a secondary containment system that includes a device for de-

---

* Senior Circuit Judge Nies died on August 7, 1996. This case was decided by the remaining judges in accordance with Fed.Cir. Rule 47.11.

tecting when a leak has occurred and for announcing the leak by an "externally manifested signal."

Before filing the lawsuit that gave rise to these appeals, Bravo's principal, Sergio Bravo, attended trade shows at which he saw CTC's containment boxes and obtained advertising literature on CTC's products. Although the CTC containment boxes that Mr. Bravo saw did not include leak detectors, Mr. Bravo testified in his deposition that he concluded CTC was infringing his patents based on his visual inspection of CTC's boxes at the trade shows and his review of CTC's literature. Mr. Bravo testified that he discussed his observations with his attorney and gave his attorney the materials he had collected, but he did not secure an infringement opinion from counsel prior to filing suit or at any time thereafter. In September 1993, plaintiff Bravo filed its complaint alleging that CTC was liable for direct infringement, contributory infringement, and inducement of infringement of three patents. The complaint included a claim of unfair competition under California Business and Professions Code § 17200 and a claim of "product disparagement."

In January 1995, CTC filed a motion for summary judgment on all claims. In opposition, the plaintiff filed a declaration by Mr. Bravo with accompanying photographs allegedly depicting two installations of CTC containment boxes that infringed the '024 patent. In the declaration, Mr. Bravo asserted that the depicted CTC containment box "contains a leak detection device manufactured by a company called Beaudreau." The declaration further asserted that Mr. Bravo was "familiar with the Beaudreau sensor." In addition, the declaration stated that "[t]he Beaudreau sensor specifically alerts an operator when a low level of fuel, i.e. fuel accumulated at the bottom of a containment box, automatically trips the shear valve and cuts off the flow of gasoline."

In March 1995, the district court granted summary judgment in favor of CTC on all claims. In granting CTC's motion, the district court stated that CTC's devices do not infringe any claims of the '024 patent "because there is no evidence that the defen-

dant's products have a leak detection device with an external signal." The court added that the plaintiff had offered "no evidence at all" to support the unfair competition and product disparagement claims.

After ruling on CTC's motion for summary judgment, the district court considered CTC's pending motion for sanctions under Rule 11. CTC had moved for sanctions in light of Bravo's responses to CTC's discovery requests, which led CTC to believe that Bravo had filed the suit without conducting a reasonable investigation and that Bravo was asserting frivolous claims. On March 24, 1995, the court entered an order summarily denying CTC's motion for sanctions.

Bravo appealed the district court's grant of summary judgment to CTC. In response, CTC argued that the court properly granted summary judgment because Bravo failed to demonstrate the existence of any triable issues. Specifically, CTC argued that Bravo proffered no admissible evidence of direct infringement by CTC or any third party, and that Bravo likewise offered no evidence of unfair competition. In its principal brief, CTC also asserted that Bravo's appeal from the summary judgment was frivolous, and it asked for an award of its costs and attorneys' fees on appeal as damages under Rule 38, Fed.R.App.P.

This court summarily affirmed the district court's order granting summary judgment in favor of CTC. *S. Bravo Sys., Inc. v.Containment Technologies Corp.,* 78 F.3d 603 (Fed. Cir.1996) (Table). The court left open, however, the question whether Rule 38 sanctions should be imposed on Bravo in connection with the appeal. During oral argument, we directed Bravo's counsel to brief the sanctions issue, and he has done so.

## II

 We first address the question whether the district court properly denied CTC's request for Rule 11 sanctions based on Bravo's conduct in connection with the proceedings before the district court. Rule 11 calls for sanctions to be imposed on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factu-

al foundation, or asserted for an "improper purpose." *Conn v. Borjorquez,* 967 F.2d 1418, 1420 (9th Cir.1992); *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir.1990) (en banc). A "frivolous" argument or claim is one that is "both baseless and made without a reasonable and competent inquiry." *Id.* at 1362.

In *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990), the Supreme Court held that although a Rule 11 determination involves both factual and legal issues, all aspects of the Rule 11 determination are reviewed for an abuse of discretion. That deferential standard is appropriate, the Court held, because "the district court is better situated than the court of appeals to marshall the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Id.* at 402, 110 S.Ct. at 2459.

 The district court denied CTC's motion for sanctions without explanation. In many cases, it is not necessary for a district court to elaborate on its denial of a request for Rule 11 sanctions. Sanctions are often sought in cases in which they are manifestly unwarranted, and it would impose an undue burden on district courts to require a detailed explanation for the denial of sanctions in every case. When the requesting party makes a strong showing that Rule 11 violations may have occurred, however, the district court should provide some explanation for disregarding the proffered showing. *See Townsend,* 929 F.2d at 1366 ("[W]e must know to what we defer; when we are not certain of the district court's reasoning, or when we cannot discern whether the district court considered the relevant factors, we must remand.").

CTC made a substantial Rule 11 showing in this case. For example, in support of its charge that Bravo failed to conduct a reasonable inquiry before filing this lawsuit, CTC argues that Bravo's only evidence of pre-suit inquiry is that Mr. Bravo examined the CTC devices and literature and concluded that they infringed his patents. The evidence of record indicates that Bravo's attorneys relied on their client's lay opinion that CTC's devices infringed. Determining infringement,

however, requires that the patent claims be interpreted and that the claims be found to read on the accused devices. Although one of Bravo's attorneys asserted in an affidavit that he "spoke to Mr. Bravo at length about what he had observed and his conclusions and analysis," and that he "conducted independent research into appropriate legal issues," there is no evidence that either of Bravo's attorneys ever compared the accused devices with the patent claims. If the district court finds that Bravo's attorneys conducted no investigation of the factual and legal merits of Bravo's claims other than to rely on Mr. Bravo's lay opinion that CTC was infringing the '024 patent, it would be difficult to avoid the conclusion that sanctions are appropriate. *See Hendrix v. Naphtal,* 971 F.2d 398, 400 (9th Cir.1992) ("blind reliance on a lay client's ability to decide the legal question of domicile does not constitute a reasonable inquiry under Rule 11").

Bravo's response to CTC's summary judgment motion consisted of several unauthenticated photographs and a declaration by Mr. Bravo. In his declaration, Mr. Bravo averred that he had personal knowledge of the matters contained in his declaration. He then stated that the photographs depicted a CTC containment box outfitted with a leak detection device manufactured by a company named Beaudreau. He asserted that he was personally familiar with the Beaudreau sensor, and he explained that it functions in the same manner as the leak detection device called for in his patent claims. Subsequent to his declaration, however, Mr. Bravo admitted in a deposition that he had never seen the installation depicted in the photographs, that he had never seen a Beaudreau sensor before, and that he had no "personal knowledge about [how the] Beaudreau sensor works." Again, subject to further inquiry by the district court, the evidence of record provides substantial support for CTC's claim that Mr. Bravo's declaration was false or misleading, and that, in light of the admissions made by Mr. Bravo in his deposition, which were never explained in any subsequent evidentiary submission, the declaration did not provide substantial support for Bra-

vo's legal position that summary judgment was inappropriate in this case.

In summary, we conclude that CTC proffered substantial evidence in support of its Rule 11 motion and that the district court abused its discretion by denying the Rule 11 motion without adequate explanation. We therefore remand this case to the district court for further consideration of CTC's motion for Rule 11 sanctions. *See Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1257, 16 USPQ2d 1347, 1355 (Fed.Cir.1990).

### III

■ We now turn to the question whether sanctions should be imposed under Rule 38, Fed.R.App.P., for Bravo's conduct in pursuing and handling the appeal from the district court's summary judgment order. Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a ... reasonable opportunity to respond, award just damages and single or double costs to the appellee." An appeal is frivolous if "the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there really is no appealable issue." *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1579–80, 17 USPQ2d 1914, 1918 (Fed.Cir.1991); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554, 220 USPQ 193, 203 (Fed.Cir.1983).

■ Because the district court's grant of summary judgment was unassailable, Bravo's appeal was frivolous. As the patentee, Bravo bore the burden to prove direct infringement by a preponderance of the evidence. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535, 19 USPQ2d 1367, 1369 (Fed.Cir.1991). In the summary judgment proceeding, Bravo therefore had the burden of designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To avoid summary judgment Bravo was required to proffer evidence that CTC's containment box contained every claim element either exactly or by a substantial equivalent.

As we have noted, Bravo's submission in opposition to CTC's summary judgment motion was woefully inadequate. Instead of setting forth "specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, Mr. Bravo's declaration consisted of unsupported assertions of infringement. In particular, it provided no basis, apart from his own assertion, for concluding that CTC had sold containment boxes equipped with a leak detector capable of generating an externally manifested signal, as required by the claims. The infirmities in the declaration were underscored when, in the course of his deposition, Mr. Bravo admitted that he could not authenticate the photographs accompanying the declaration, which purported to depict CTC containment boxes equipped with "Beaudreau sensors," and that he had never seen a Beaudreau sensor and had no personal knowledge about how a Beaudreau sensor worked. Bravo's failure to proffer any evidence of direct infringement likewise doomed its claims of contributory infringement and inducement to infringe. *See Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 774, 28 USPQ2d 1378, 1382 (Fed.Cir.1993); *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687, 231 USPQ 474, 477 (Fed. Cir.1986).

With respect to the unfair competition claim, Bravo argues that the district court should not have granted summary judgment because patent infringement is actionable as an unfair business practice under California law. We have held, however, that patent infringement per se does not give rise to an action for unfair competition, *see Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 671, 7 USPQ2d 1097, 1105–06 (Fed.Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988), and Bravo has not pointed to any pertinent authority to support its legal theory. The sole authority on which Bravo relies is *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 6 USPQ2d 2034 (9th Cir.1988). That case, however, stands only for the unremarkable (and irrelevant) proposition that trademark infringement can give rise to a claim for unfair competition. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2.02

(3d ed.1996) ("trademark infringement is a type of unfair competition"). By contrast, patent infringement and unfair competition "have long existed as distinct and independent bodies of law, each with different origins and each protecting different rights." *Mars, Inc. v. Kabushiki–Kaisha Nippon Conlux,* 24 F.3d 1368, 1373, 30 USPQ2d 1621, 1624 (Fed.Cir.1994). There is therefore no legal support for Bravo's contention that proof of patent infringement, standing alone, provides the basis for a claim of unfair competition. In any event, as we have discussed, Bravo failed to present a triable issue on the underlying question of patent infringement. Bravo's appeal of the district court's ruling on the unfair competition count was therefore frivolous.

The infirmities of Bravo's appeal as filed were exacerbated by representations made in Bravo's briefs and in oral argument that lacked legal or factual support. For example, Bravo stated that "[i]n selling its containment boxes, CTC also sells leak detection devices." There was no evidence in the record, however, that CTC had ever sold a leak detection device, and CTC offered evidence that it had not. Nor was there any evidence in support of Bravo's assertion that CTC's containers are "specifically manufactured for leak detection devices," much less that, as Bravo claimed, CTC sold containment boxes "knowing [they] would be installed with a leak detection device." In addition, Bravo's assertion that there are "no other uses" for a containment box that does not provide for leak detection is contrary to the evidence, including an admission by Mr. Bravo himself, that many containment boxes do not include leak detectors.

Rule 38 authorizes us to award "just damages" and single or double costs to the appellee. We consider that the appropriate award of damages is the amount reasonably expended by CTC to defend the appeal from the summary judgment order (No. 95–1277). CTC is therefore directed to submit a detailed statement of its reasonable expenses attributable to that appeal. An order setting forth the amount of the damages to be awarded will follow. In light of the character of the conduct we are sanctioning, we hold that Bravo and its counsel shall be jointly and severally liable for payment of the damages assessed. *See Munoz v. Strahm Farms, Inc.,* 69 F.3d 501, 505, 36 USPQ2d 1499, 1503 (Fed.Cir.1995); *State Indus., Inc. v. Mor–Flo Indus., Inc.,* 948 F.2d 1573, 1582, 20 USPQ2d 1738, 1745–46 (Fed.Cir.1991). An appeal is an entirely appropriate means of seeking to vindicate legal rights, but a frivolous appeal imposes substantial and gratuitous injury. Parties who inflict such injury should be held accountable for it, and in a case such as this one their attorneys should likewise be called upon to answer for the injury they inflict.

Costs to CTC.

*VACATED AND REMANDED; RULE 38 SANCTIONS IMPOSED.*