**EM BAGELS, LTD., Plaintiff,**

v.

**BAGEL EMPORIUM OF ARMONK, INC. (sued as Howard Rozins & Michael Rozins, d/b/a Bagel Emporium), Defendant.**

No. 99 Civ. 8836(CLB).

United States District Court,
S.D. New York.

Feb. 28, 2000.

Carl C. Kling, Hawthorne, NY, for plaintiff.

Howard N. Aronson, Lackenbach, Siegel, Marzullo, Aronson & Greenspan, Scarsdale, NY, for defendant.

### MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion filed January 27, 2000, heard and fully submitted on February 25, 2000, Bagel Emporium of Armonk, Inc., defendant in this patent infringement action, moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P. based on non-infringement. Defendant also seeks an award of attorneys' fees pursuant to 35

U.S.C. § 285. Plaintiff filed opposition papers on February 17, 2000, and February 23, 2000. Defendant filed reply papers on February 22, 2000.

Patent No. 5,759,606 ("Patent 606") issued to Plaintiff's assignors Bruce A. Kade and Robert W. Brown (the "Inventors") on June 2, 1998, for a "Method of Preparing Bagel Dough to Form an English Muffin Bagel." The application was filed June 24, 1996.

### The Bagel

The origin of the bagel is unclear and there are many proposed explanations as to when and where the bagel first appeared. The earliest printed reference to a bagel is in the 1610 Community Regulations of Cracow, Poland, which stated that a bagel was to be given as a gift to a woman in childbirth. See Bagels—Home Cooking at <http://homecooking.about.com/food/homecooking/library/weekly/aa011998.htm?rnk=r & terms=bagels> citing Rosten, Leo, The Joys of Yiddish. A popular origin story attributes the creation of the bagel to a Viennese baker who wanted to honor Polish King Jan Sobieski's defense of Austria from Turkish invasion. The king was a skilled horseman and so the baker made ringed dough resembling a stirrup. The Austrian word for stirrup is Beugel. Bagel History at www.skokiebagels.com/history.html> ("Bagel History"); Merrow, Anne The Round Roll with the Hole, www.princeton.edu/~eclectic/fall95/reporter/bagel.html>. As this event occurred in 1683, it is more likely the first commercial bagel production as opposed to the first actual bagel. Another source claims that in the seventeenth century bagels were readily available in Russia. These bagels, called "bubliki," were sold on strings to take advantage of their shape. See Merrow, supra. Another source suggests that the bagel is of American origin, like chop suey, and was developed in the United States in the style of the breads described in the foregoing origin stories. Id. Other writers trace the bagel to Israel, Poland, or Hungary. Id.

The traditional bagel is a doughnut shaped hard roll made of raised dough which is boiled first and then baked in an oven. For many years, the art of bagel making was a closely held secret. The International Bakers' Union, founded in New York City in 1907, guarded the secret and permitted only sons of members to be apprenticed to the trade. The International Bakers' Union has since disbanded, and methods of bagel making are readily available to the public. A standard bagel is made from flour, water, sugar, salt, and active dry yeast. See Pastry Wiz Recipe Archive at <http:www.our-daily-bread.com/recipes/whatisa.htm>; See also United States Patent No. 5,759,606 ("Patent 606"), Col 2, lines 25–35. Traditional bagels were sometimes seasoned with seeds or spices baked directly into the surface of the bagel, such as poppy, sesame, onion or garlic. Modern bagel makers have also developed more exotic flavorings, such as whole wheat, egg, rye, chocolate, jalapeno and cheese, raisin or blueberry.

### The English Muffin

The English muffin may have been derived from the Welsh "Bara Maen." The "Bara Maen" was a leavened cake baked in the 10th Century on hot stones. See The Origin of Thomas' English Muffins <www.bestfoods.com/profile_history_thomas.htm>. In early 19th Century England, servants made a similar item by baking a mixture of leftover bread and biscuit dough and mashed potatoes on a hot griddle. See History of Bays English Muffins <www.bays.com/info/history.html>. Originally, only servants ate the muffins, but eventually they became popular at all levels of English society. Id. The English muffin was most popular in Great Britain in the period preceding World War I, and for many years they were sold door to door by the "muffin man." Id. English Muffins became common in the New World when Samuel Bath Thomas began the sale of English Muffins in about 1880

in his New York City bakery, according to a recipe he brought with him from Plymouth England in 1875. The Origin of Thomas' English Muffins, *supra.* The English muffin is made from flour, sugar, salt, milk, butter, water, egg and active dry yeast. *See* Clayton, Bernard, *Bernard Clayton's Book of Small Breads,* (Simon & Schuster 1998). The dough is left to rise for a long time in order to produce the distinctive porous texture which is the basis for the muffin's popularity. *Id; See also* Patent 606, Col 1, line 29–32. The dough is placed upon a hot griddle and turned repeatedly until the English muffin is brown and springy. Clayton, *supra.* English Muffins do not have the characteristic center hole found in bagels.

*The Patent*

Patent 606 contains three claims. Claim 1 of Patent 606 describes:

A method of preparing bagel ingredients to form an English muffin bagel, comprising the following steps

a) mixing a bagel-dough mix;

b) kneading said bagel-dough mix;

c) letting said bagel-dough mix rise in a warm environment for a first period of time sufficient to form a first-rise bagel dough;

d) shaping said first-rise bagel dough into a set of individual bun portions;

e) letting said set of bagel-dough individual bun portions rise in a warm environment for a second period of time sufficient to form second-rise bagel dough individual bun portions;

f) proofing said second-rise bagel dough individual bun portions in a warm environment for a third period of time of approximately three hours, said third period of time is greater than the sum of rise times in steps c and e to form English muffin bagel dough individual bun portions; and

g) griddle-baking said English muffin bagel dough individual bun portions to form completed English muffin bagels.

Patent 606, Col. 3, line 17—Col. 4, line 3. Claim 2 of Patent 606 is dependent upon Claim 1 and need not be analyzed separately. Claim 3 of Patent 606 repeats steps c through g of Claim 1 and is identical to Claim 1 for purposes of this Court's analysis.

Defendant Bagel Emporium of Armonk, Inc. manufactures and markets an English muffin bagel. Plaintiff alleges that Defendant is using the method covered by Patent 606. Defendant's method, as verified in pre-trial discovery at its bakery, comprises the following:

1) ingredients are placed into a mixing machine and mixed into dough;

2) the dough is kneaded by the same machine;

3) the dough is transferred to a work table where it is cut into pieces small enough to fit in the shaping machine;

4) the dough is transferred to a shaping machine which shapes the bagels;

5) the shaped dough is transferred to cornmeal coated trays which are placed on wheeled racks;

6) the wheeled racks are covered and the dough is left to rise for 30 to 120 minutes;

7) the racks of risen dough are transferred into a walk-in cooler which halts the rising and toughens the "skin" of the bagel;

8) the bagels are transferred to baking sheets, "mopped" with water,[1] and baked in an oven.

*See* Rozins Dec. ¶¶ 6–21 and Video, Ex. 1 to Golden Dec.

In 1996, Mr. Kade, one of the inventors, was employed by Defendant as General Manager of its Westchester County stores. Plaintiff alleges that during this period Defendant learned the patented method of making English muffin bagels from Mr. Kade. Defendant claims that it has been making English muffin bagels long before

1. The dough is "mopped" by being rubbed with a wet cloth.

it employed Mr. Kade. Rozens Dec. ¶ 3. Mr. Kade's employment with Defendant ended in May 1996, before the Patent was applied for. Neither Mr. Kade nor Plaintiff witnessed Defendant's method for making English muffin bagels between May 1996 and the filing of the complaint.

On November 13, 1998, Plaintiff mailed to Defendant a cease and desist demand and an offer of license to practice the art of the patent. Defendant has not accepted the offer of license and has continued to manufacture English muffin bagels. Plaintiff filed the present action on August 11, 1999, against Howard Rozins and Michael Rozins d/b/a Bagel Emporium, seeking damages for patent infringement and an injunction preventing further infringement. On December 3, 1999, this Court dismissed the action as to Howard Rozins and Michael Rozins and substituted Bagel Emporium of Armonk, Inc., as defendant.

*Summary Judgment*

The standards for granting summary judgment in this Circuit are so well known as to obviate the need for citation. We note, however, that all facts must be viewed in the light most favorable to the non-moving party.

■ In order to establish a *prima facie* claim of Patent infringement under 35 U.S.C. § 271(a) each element of the patent claim must be present in the accused violation. *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed.Cir.1985). In a claim of infringement of a method or process patent such as this one, all steps of the method or process must be used by the alleged infringer. *See, e.g., Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993). An accused method does not infringe a patent if any of the claimed steps is not practiced. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 798 (Fed.Cir.1990).

■ Defendant's method of making English muffin bagels does not infringe Patent 606 because Defendant does not perform all of the claimed steps. Defendant's method does not contain three rising periods, contrasted with one, and it does not provide for the long (approximately three hour) rising period.[2] Also Defendant's bagels are not griddle baked like English muffins, as called for in the patent, but are cooked in an oven like bagels. Unlike most bagels, neither the product described in the patent nor that sold by Defendant is boiled.

Patent 606 calls for three separate rising periods. Defendant's method uses only one rising period. *See* Birney Aff. (Doc. No. 14); Video, Ex. 1 to Golden Aff. The short time the dough remains on a work table while it is transferred from the mixing machine to the shaping machine does not constitute a rising period because the dough remains on a work table for approximately two to ten minutes, depending solely on how long it takes the baker to cut the dough into long strips and transfer the strips into the shaping machine. Video, Ex. 1 to Golden Dec. Patent 606's specification calls for a rising period before shaping of a quarter hour. *See* Patent 606, Col. 2, lines 39–40.

■ Plaintiff claims that the time the dough is on the table is sufficient to satisfy Claim 1, step c's requirement of a "time sufficient to form a first-rise bagel dough." Under the doctrine of equivalents, a process may infringe a method patent if the allegedly infringing steps perform "substantially the same function in substantially the same way, to obtain the same result" as the patented steps. *See Warbern Packaging Industries, Inc. v. Cut Rate Plastic Hangers, Inc.*, 652 F.2d 987 (2d Cir.1981), *cert. denied*, 454 U.S. 1149, 102 S.Ct. 1014, 71 L.Ed.2d 303 (1982). However, in this case, the doctrine of file wrapper estoppel, or prosecution history estoppel,

---

**2.** "Proofing" is conceded by Plaintiff to be the equivalent in this context of a rising period.

*See* Transcript of oral argument.

precludes this contention. File wrapper estoppel prevents a patent holder from adopting a position during litigation which contradicts a position taken during the prosecution of the patent application. *Narda Microwave Corp, v. General Microwave Corporation,* 675 F.2d 542 (2d Cir. 1982); *See also E.I. du Pont de Nemours & Co. v. Phillips Petro.,* 849 F.2d 1430, 1438 (Fed.Cir.1988), *cert. denied,* 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988) ("Those arguments ... must be examined to ascertain the true meaning of what the inventor intended to convey in the claims.").

■ During the patent prosecution, the applicants stated that a five minute rise time would be outrageously short. Response to Office Action, February 2, 1998, in Ex. 2 to Golden Dec. The two to ten minutes in which Defendant's dough is being transferred to the shaping machine would be such an "outrageously short" rise time. The same analysis applies to the time the dough remains on a tray after shaping but before the dough is covered and left to rise. This time, half a minute to eight minutes in Defendant's process, is insufficient to satisfy the rising period in Claim 1, step e. ("another quarter hour or so") The absence of the rising periods claimed in Patent 606, Claim 1, steps c and e precludes a finding of infringement.[3]

Defendant's method does not contain the approximately three hour rising period mentioned in step f of Claim 1. While Defendant does use a long rising period in its method, Defendant states that the longest it allows any dough to rise is two hours. Rozins Dec. ¶ 16. The only evidence offered that the dough is allowed to rise longer is an alleged statement by an unidentified counterman at the defendant's Bagel Emporium branch in White Plains, New York and the fact that Defendant's bagels contain the same "kiss" marks[4] as bagels produced by Patent 606's method.[5] The unidentified counterman allegedly stated that the English muffin bagels were "left to rise for 2½ hours." Sharp Dec. ¶ 4. This statement is inadmissible as hearsay, and can not be used to show that Defendant uses Plaintiff's protected three hour rising period.

■ The fact that the bagels made by Defendant's process have a similar appearance to those made using Patent 606's process does not establish that Defendant uses an approximately three hour rising period. Defendant admits that it uses a long, 30 to 120 minute rising period in its process. The similar "kiss" marks may result from this admitted long rising period. Infringement of a method patent is determined by comparison of the allegedly infringing process used to the patented process, and not a comparison of the commercial end products. *Zenith Laboratories, Inc. v. Bristol–Myers Squibb Co.* 19 F.3d 1418, 1423 (Fed.Cir.1994) *cert. denied,* 513 U.S. 995, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994). The fact that Defendant's long rise period produces the same "kiss" marks as Patent 606's process does not convert a non-infringing process in to an infringing one.

Defendant does not griddle bake its English muffin bagels as Patent 606's method requires. As the term "griddle bake" is not defined within the patent, the Court

---

**3.** The time Defendant's dough spends in the shaping machine is not a rising period. Patent 606 recognizes that the shaping of the dough is a separate step from the rising period. Patent 606, Col. 3, line 25–26.

**4.** The "kiss" marks are created when a bagel touches one or more neighboring bagels while baking. The bagels bake together and must be torn apart to separate them. The tearing produces the "kiss." Traditional bagels do not touch while baking, and do not have "kiss" marks.

**5.** Plaintiff also submits the affidavit of Barbara Andrade in support of this contention. The affidavit states that a manager told Ms. Andrade that Defendant's English muffin bagels took "about an hour to rise." The Court fails to see how this can show that Defendant uses a long, approximately three hour rising period.

must use the term's ordinary meaning. *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed.Cir.1995). The common definition of a griddle is "a flat surface (as of soapstone or metal) on which food (as batter or bacon) is placed to be cooked by dry heat (as from fire or an electric element)." *See Webster's Third New International Dictionary* 998 (Unabridged Ed.1993). The common definition of griddle bake would be to cook by dry heat on a griddle, where all the heat comes from below. The common definition of an oven is "a heated enclosure of varying construction used for such purposes as (1): a chamber in a stove used for baking or roasting." *Id.* at 1605. Unlike a griddle in which the top is open to the atmosphere an oven has confined heated ambient air surrounding what is being cooked. Further, Patent 606 specifically distinguishes griddle baking from oven baking, and suggests griddle baking is part of the "divergence" of the patented method from traditional bagel making which uses an oven. *See* Patent 606, Col. 2, lines 52–57. Defendant bakes English muffin bagels in the same oven as it does regular bagels. The presence of flat pans used within Defendant's oven to remove the bagels easily does not convert oven baking into griddle baking.

There is no infringement, therefore Defendant is entitled to judgment in its favor.

*Attorney's Fees*

Pursuant to 35 U.S.C. § 285, "[t]he Court in exceptional circumstances may award reasonable attorney fees to the prevailing party." Defendant suggests that this is an appropriate situation for an award of fees because Plaintiff did not view Defendant's method of making English muffin bagels before filing this lawsuit.

■ Before filing a patent infringement action, Plaintiff must engage in a reasonable inquiry and Plaintiff's counsel must do more than simply rely on a client's lay opinion that Defendant is infringing the patent. *See e.g., Cambridge Products,*

*Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed.Cir.1992); *See also, S. Bravo Systems v. Containment Technologies Corp.*, 96 F.3d 1372, 1375 (Fed.Cir. 1996) ("If the district court finds that Bravo's attorneys conducted no investigation of the factual and legal merits of Bravo's claims other than to rely on Mr. Bravo's lay opinion that CTC was infringing the '024 patent, it would be difficult to avoid the conclusion that sanctions are appropriate.").

■ Plaintiff claims that it attempted to perform a thorough pre-filing investigation. Plaintiff states that counsel attempted to examine Defendant's method of making English muffin bagels, but that Defendant cancelled every appointment Plaintiff scheduled. Plaintiff's counsel spoke with Mr. Kade, one of the Inventors, regarding Defendant's access to Patent 606's method and examined Defendant's finished product and determined that it had the typical appearance resulting from the use of Patent 606's method. Counsel interviewed potential witnesses and acquired affidavits from two of these potential witnesses.

On this record, the Court does not believe that Plaintiff's counsel was in any way careless or unprofessional in bringing the suit and finds that no exceptional circumstances exist which would justify fee shifting. The American Rule should apply here, and an award of legal fees is inappropriate in this case.

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Court declines to award legal fees to Defendant. The Clerk shall file a final judgment of non-infringement.

SO ORDERED