275 F.3d 1066 (Fed. Cir. 2002)
 ANTHONY JOHN ANTONIOUS, Plaintiff,
and
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., Sanctioned Party-Appellant,
v.
SPALDING & EVENFLO COMPANIES, INC., and SPALDING SPORTS WORLDWIDE, Defendants-Appellees.
 01-1088
 United States Court of Appeals for the Federal Circuit
 DECIDED: January 7, 2002
 
 Appealed from: United States District Court for the District of Maryland, Judge Marvin J. Garbis[Copyrighted Material Omitted]
 Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for plaintiff and sanctioned party-appellant. With him on the brief were Thomas H. Jenkins, of Washington, DC; and Richard L. Rainey, Finnegan, Henderson Farabow, Garrett & Dunner, L.L.P., of Atlanta, Georgia. Of counsel was Michael J. McCabe, II, of Atlanta Georgia.
 Christopher B. Fagan, Fay, Sharpe, Fagan, Minnich & McKee, LLP, of Cleveland, Ohio, argued for defendants-appellees. With him on the brief were Richard M. Klein, and Steven M. Auvil.
 Before LOURIE, BRYSON, and LINN, Circuit Judges.
 BRYSON, Circuit Judge.
 
 
 1
 Anthony John Antonious filed this patent infringement action against Spalding & Evenflo Companies, Inc., and Spalding Sports Worldwide (collectively, "Spalding") in the United States District Court for the District of Maryland. During the litigation, Spalding sought sanctions under Fed. R. Civ. P. 11(c) against both plaintiff and plaintiff's counsel, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. ("Finnegan Henderson"), for failure to conduct a reasonable prefiling factual investigation. The district court awarded sanctions against Finnegan Henderson, and Finnegan Henderson appealed.
 
 
 2
 We vacate the sanctions order and remand to the district court for further proceedings. To the extent the district court concluded that Finnegan Henderson's proposed construction of certain critical claim language was frivolous, we hold that the court's conclusion was legally erroneous. To the extent the district court concluded that Finnegan Henderson's prefiling investigation was inadequate, we cannot uphold the court's ruling on that ground because the court apparently analyzed the prefiling investigation in light of its view of the proper claim construction. On remand, the district court must assess Finnegan Henderson's prefiling investigation in light of Finnegan Henderson's proposed claim construction and may impose sanctions only if the court determines that the prefiling investigation was inadequate under that claim construction.
 
 
 3
 * Mr. Antonious is the owner of U.S. Patent No. 5,482,279 ("the '279 patent"), which is directed to an improved perimeter weighting structure for metal golf club heads. The '279 patent contains three independent claims, claims 1, 13, and 56, which provide as follows, in pertinent part:
 
 
 4
 1. A metal wood-type golf club head comprising:
 
 
 5
 a golf club head body including a heel, toe, bottom, crown, side walls, ball striking face and a rear club face, said ball striking face intersecting with a forward most progression of said bottom to define a leading edge of the ball striking face;
 
 
 6
 a hosel integrally connected to said club head body; and
 
 
 7
 a peripheral mass positioned along at least the majority of the interface of the ball striking face and the crown of the club head, wherein the hosel extends into and connects with a portion of said peripheral mass . . . .
 
 
 8
 13. A metal wood-type golf club head comprising:
 
 
 9
 a golf club head body including a heel, toe, bottom, crown, ball striking face and rear club face, said ball striking face intersecting with a forward most progression of said bottom to define a leading edge of the all striking face;
 
 
 10
 said club head body having a frontal body section and a rearward shell attached to said frontal body section at the interface of said frontal body section and said rear shell;
 
 
 11
 a hosel integrally connected to said club head body; said frontal body section including:
 
 
 12
 the ball striking face;
 
 
 13
 the rear club face; and
 
 
 14
 a peripheral mass projecting outwardly from the rear club face and extending around at least a portion of the outer periphery of said frontal body section . . .; and
 
 
 15
 said shell extending rearwardly beyond said frontal body section and forming the crown, the rear portion of said club head, and a cavity behind said frontal body section.
 
 
 16
 56. A metal wood-type golf club head consisting essentially of:
 
 
 17
 a golf club head body made only from a metal material, said golf club head body including a heel, toe, bottom, crown, side walls, ball striking face and a rear club face, said ball striking face intersecting with a forward most progression of said bottom to define a leading edge of the ball striking face;
 
 
 18
 said ball striking face having a thickness in a front to rear direction of at least 0.100 inch;
 
 
 19
 a hosel integrally connected to said club head body; and
 
 
 20
 a peripheral mass positioned along at least the majority of the interface of the ball striking face and the crown of the club head, said peripheral mass having a thickness in a front to rear direction of at least 0.125 inches . . . .
 
 
 21
 Spalding sells the Intimidator golf club line, which it introduced in 1995. The Intimidator line includes drivers and fairway woods that use what Spalding refers to as "titanium insert technology." The Intimidator club heads are cast from stainless steel with a continuous mounting flange that runs along a recess in the interior surface of the club head body. A titanium insert, or face plate, is then inserted into the recess. The titanium insert rests against the mounting flange, which prevents it from being forced back into the interior of the club head body when the club strikes a golf ball. The insert is fixed into the club head body by either crimping or welding.
 
 
 22
 In the spring of 1997, Mr. Antonious saw several Spalding Intimidator metal wood-type golf clubs in retail stores. He purchased one of the Intimidator drivers and cut open the club head. After inspecting the interior of the club head, Mr. Antonious concluded that the club infringed his '279 patent. He then contacted his patent counsel at Finnegan Henderson, advised them that he believed the Intimidator driver infringed the '279 patent, and gave them the cut-open Intimidator driver to examine.
 
 
 23
 The Finnegan Henderson attorneys reviewed the language and prosecution history of the '279 patent and interpreted its claims. Claim 1 recites that the hosel, which is the socket in the head of the club into which the shaft is inserted, "extends into and connects with" the peripheral mass that is positioned along the interface between the ball-striking face and the crown of the club head. The Finnegan Henderson attorneys concluded that the limitation "extends into and connects with" could be interpreted to read on any hosel that abuts against and is fastened to the peripheral mass.
 
 
 24
 After construing the claims of the '279 patent, the Finnegan Henderson attorneys, in consultation with Mr. Antonious, compared the construed claim 1 to the cut-open driver that Mr. Antonious had purchased. After defining the continuous mounting flange as the peripheral mass referred to in the patent, they decided that the hosel of the cut-open Intimidator both abutted against and joined with the interior portion of that flange. As a result of comparing the cut-open club with the claim language as they interpreted it, the Finnegan Henderson attorneys concluded that the cut-open Intimidator club literally infringed claim 1 of the '279 patent.
 
 
 25
 The Finnegan Henderson attorneys also reviewed literature about the Intimidator line of golf clubs, including Spalding patents, advertisements and similar Spalding literature, and information on Spalding's internet site. Neither the Finnegan Henderson attorneys nor Mr. Antonious cut open and examined any other club head from the Intimidator metal wood line to see whether the other clubs had a peripheral mass and, if so, whether the hosel extended into and connected with that peripheral mass. Instead, based on their consultations with Mr. Antonious and their review of the available literature, the Finnegan Henderson attorneys inferred that all the Intimidator fairway woods had the same interior structural characteristics as the single cut-open driver with respect to peripheral weighting and the connection of the hosel to the peripheral weights. They therefore presumed that the other Intimidator woods also infringed the '279 patent.
 
 
 26
 On June 17, 1996, Mr. Antonious filed suit against Spalding alleging that the Intimidator metal woods infringed "one or more claims of the '279 patent." The complaint also charged that another line of Spalding golf clubs, the "Tour irons," infringed another utility patent, U.S. Patent No. 5,328,184 ("the '184 patent"), and two design patents owned by Mr. Antonious.
 
 
 27
 With respect to the metal woods, the complaint did not specify which clubs in the Intimidator line were alleged to infringe the '279 patent, nor did it specify which claims of the '279 patent were allegedly infringed. In response to a scheduling order entered by the district court, however, the Finnegan Henderson attorneys filed and served a letter on October 30, 1997, that elaborated upon and explained Mr. Antonious's claims. In the October 30 letter, the Finnegan Henderson attorneys, on behalf of Mr. Antonious, alleged that 21 named Intimidator woods infringed independent claims 1, 13, and 56, as well as various dependent claims of the '279 patent.
 
 
 28
 In January 1998, Spalding served and filed a motion for sanctions on Finnegan Henderson and Mr. Antonious. Spalding contended that Finnegan Henderson and Mr. Antonious failed to determine whether the hosel of each of the 21 accused Intimidator woods met the "extends into and connects with said portion of a peripheral mass" limitation of claim 1 of the '279 patent before charging that the 21 Intimidator woods infringed.
 
 
 29
 Spalding subsequently filed motions for summary judgment with respect to all four patents at issue. Spalding contended that its Intimidator woods did not infringe the '279 patent, that its Tour irons did not infringe the '184 patent, and that Mr. Antonious's two design patents were invalid. The district court granted Spalding's motions, holding that the two design patents were invalid and that Spalding's accused clubs did not infringe either utility patent. With respect to the '279 patent, the court examined the relationship between the hosel and the portion of the Intimidator clubs that Mr. Antonious contended was the "peripheral mass." The court then explained:
 
 
 30
 It can be seen that the hosel cylinder extends through the shell of the club and touches the peripheral mass. However, the hosel does not extend into the peripheral mass. The hosel's tangentially touching the peripheral mass does not constitute extending into the peripheral mass.
 
 
 31
 The court withheld ruling on the sanctions motion until the liability issues were finally resolved.
 
 
 32
 Mr. Antonious appealed from the summary judgment with respect to the district court's ruling that the two design patents were invalid and that Spalding's Tour irons did not infringe the '184 patent. He did not appeal from that aspect of the court's summary judgment order holding that the Intimidator woods did not infringe the '279 patent. In August 1999, this court reversed the district court's order with respect to the two design patents but affirmed the district court's noninfringement ruling with respect to the '184 utility patent.
 
 
 33
 Following this court's decision, the district court addressed the sanctions issue and awarded $30,000 in sanctions against Finnegan Henderson in connection with its claims against Spalding's Intimidator woods. When Finnegan Henderson appealed the sanctions order to this court, Spalding moved to dismiss the appeal, contending that the appeal was untimely. Another panel of this court entered an order holding that the appeal was timely; we adhere to that ruling and therefore reach the merits of Finnegan Henderson's appeal from the sanctions order.
 
 II
 
 34
 Every paper filed in a lawsuit in federal court must be signed by at least one attorney of record. Fed. R. Civ. P. 11(a). By presenting a signed paper to the court, the attorney certifies that he has performed "an inquiry reasonable under the circumstances" and has come to three conclusions: (1) that the pleading or motion "is not being presented for any improper purpose"; (2) that "the claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; and (3) that the "allegations and other factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1)-(3). When a court finds that an attorney or law firm has failed to comply with any one of these requirements, the court may impose sanctions. Fed. R. Civ. P. 11(c).
 
 
 35
 A district court's award of sanctions under Rule 11 is reviewed for an abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990). We must therefore determine whether the district court abused its discretion in ruling that Finnegan Henderson violated Rule 11(b).
 
 
 36
 The district court held that the Finnegan Henderson attorneys failed "adequately to investigate whether the hosel of the accused intimidator metal woods extended into and connected with a portion of a peripheral mass" and that they had "no basis whatsoever to claim that this limitation of the claims at issue was present in any of the accused clubs." The court's conclusion that Finnegan Henderson's prefiling factual investigation was inadequate appears to be based in part on the court's construction of the claim language at issue. The court did not explicitly state whether it was basing its sanctions order on Finnegan Henderson's assertion of a frivolous legal position (i.e., a frivolous proposed claim construction), in violation of Rule 11(b)(2), or on Finnegan Henderson's failure to make an adequate factual investigation before filing the complaint, in violation of Rule 11(b)(3), or on a combination of the two. We therefore analyze the district court's order under each of those two possible bases for sanctions.
 
 III
 
 37
 This court has construed Rule 11, in the context of patent infringement actions, to require that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement. View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986, 54 USPQ2d 1179, 1182 (Fed. Cir. 2000); Judin v. United States, 110 F.3d 780, 784, 42 USPQ2d 1300, 1304 (Fed. Cir. 1997); S. Bravo Sys., Inc. v. Containment Techs. Corp., 96 F.3d 1372, 1375, 40 USPQ2d 1140, 1143 (Fed. Cir. 1996). Although the attorney may consult with the client, Rule 11 requires that the attorney not rely solely on the client's claim interpretation, but instead perform an independent claim analysis. S. Bravo Sys., 96 F.3d at 1375, 40 USPQ2d at 1143.
 
 
 38
 Because claim construction is a matter of law, an attorney's proposed claim construction is subject to the Rule 11(b)(2) requirement that all legal arguments be nonfrivolous. We apply the law of the pertinent regional circuit when reviewing the imposition of Rule 11 sanctions, Abbott Labs. v. Brennan, 952 F.2d 1346, 1351 n.3, 21 USPQ2d 1192, 1196 n.3 (Fed. Cir. 1991), which in this case is the Fourth Circuit. The Fourth Circuit examines an attorney's legal arguments using a standard of objective reasonableness. Cabell v. Petty, 810 F.2d 463, 466 (4th Cir. 1987). To satisfy that requirement, there must be "some basis in law" to support each legal argument in the complaint. Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991). A legal argument is unjustified if a reasonable attorney would recognize it as frivolous. Cox v. Saunders, 136 F.3d 349, 352 (4th Cir. 1998).
 
 
 39
 The Finnegan Henderson attorneys independently construed the patent claims before filing suit against Spalding; there is no suggestion that they simply relied on Mr. Antonious for their claim analysis. Thus, Finnegan Henderson may be sanctioned for violating Rule 11(b)(2) only if a reasonable attorney would have concluded that the claim construction proposed by the Finnegan Henderson attorneys was frivolous.
 
 
 40
 As noted, claim 1 of the '279 patent recites that the hosel "extends into and connects with" a portion of a peripheral mass. The Finnegan Henderson attorneys proposed a construction of the claim in which the phrase "extends into and connects with" is interpreted to read on any hosel that abuts against and is joined or fastened to the peripheral mass in the club.
 
 
 41
 Finnegan Henderson argues that its construction is supported by a dictionary definition of the term "into," which defines "into" to mean "to the inside or interior of" or, alternatively, "against" (as in "crashed into a tree"). Pointing to the alternative definition of the word "into," Finnegan Henderson argues that the limitation "extends into and connects with" can be interpreted to read on a hosel that abuts against the peripheral mass. In further support of its argument that the term "extends into" means "abuts," Finnegan Henderson points to a passage from the written description of the '279 patent and figures 5 and 7 from the patent, which according to Finnegan Henderson depict the hosel abutting, but not penetrating into, the peripheral mass. '279 patent, col. 9, ll. 55-56 ("Preferably, the hosel transitions into its peripheral mass, along the lines shown generally in FIGS. 5, 6 and 7.").
 
 
 42
 Spalding raised substantial arguments in rebutting Finnegan Henderson's claim construction, including arguments based on the text of the patent, the prosecution history, and Mr. Antonious's own testimony. Agreeing with Spalding, the district court rejected Finnegan Henderson's proffered construction of the claim language and concluded that the limitation requiring the hosel to "extend[] into" the peripheral mass is not satisfied if, as in the Intimidator clubs, the hosel merely "tangentially touch[es]" the portion of the club head asserted to be the peripheral mass. It is not necessary for us to decide whether Finnegan Henderson's proffered construction was correct. It is enough to conclude, as we do, that in light of the alternative dictionary definition and the quoted passage from the '279 patent, the claim construction that Finnegan Henderson advanced in the district court was not frivolous.
 
 
 43
 As we have noted, the district court's conclusion that there was no basis to contend that the "extends into and connects with" limitation was present in any of the accused clubs was apparently grounded in part on the court's conclusion that Finnegan Henderson's proposed construction of the critical claim limitation was so clearly incorrect as to be frivolous. Because we have concluded that Finnegan Henderson's proposed claim construction was not frivolous, we cannot uphold the district court's sanctions order under Rule 11(b)(2). We therefore next address Finnegan Henderson's argument that, under the claim construction adopted by the Finnegan Henderson attorneys, they conducted an adequate prefiling investigation of whether the accused clubs infringed claim 1 of the '279 patent, and that the district court's sanctions order therefore cannot be supported under Rule 11(b)(3).
 
 IV
 
 44
 As applied by this court, Rule 11 requires an attorney who files a patent infringement action to compare the accused device with the construed patent claims. View Eng'g, 208 F.3d at 986, 54 USPQ2d at 1183; Judin, 110 F.3d at 784, 42 USPQ2d at 1304; S. Bravo Sys., 96 F.3d at 1375, 40 USPQ2d at 1143. The attorney may consult with his client but may not rely solely on the client's lay opinion that the accused device infringes the patent. View Eng'g, 208 F.3d at 985, 54 USPQ2d at 1182; Judin, 110 F.3d at 784, 42 USPQ2d at 1304; S. Bravo Sys., 96 F.3d at 137, 540 USPQ2d at 1143. Instead, counsel must make a reasonable effort to determine whether the accused device satisfies each of the claim limitations. Judin, 110 F.3d at 784, 42 USPQ2d at 1304.
 
 
 45
 Patent infringement is a question of fact. Embrex, Inc. v. Serv. Eng'g Corp., 216 F.3d 1343, 1348-49, 55 USPQ2d 1161, 1164 (Fed. Cir. 2000). An attorney's allegation of infringement is therefore subject to the requirement of Rule 11(b)(3) that all allegations and factual contentions have evidentiary support. The Fourth Circuit has held that "[a] complaint containing allegations unsupported by any information obtained prior to filing violates the required prefiling factual investigation." Brubaker, 943 F.2d at 1373. An attorney's prefiling actions are evaluated using a standard of objective reasonableness. Cabell, 810 F.2d at 466. Thus, an attorney violates Rule 11(b)(3) when an objectively reasonable attorney would not believe, based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents.
 
 
 46
 The complaint, filed on June 17, 1997, alleged that the Intimidator woods infringed "one or more claims of the '279 patent." On October 23, the district court issued a scheduling order, which required that the plaintiff "file and serve an Initial Disclosure of Asserted Claims" specifically identifying each claim of each patent allegedly infringed by Spalding and specifically identifying each Spalding product that allegedly infringed the asserted claims. The Finnegan Henderson attorneys responded to the district court's order on October 30, 1997, with a letter alleging that 21 individually named Intimidator metal woods infringed various claims of the '279 patent, including claim 1, which was the subject of Spalding's sanctions motion.
 
 
 47
 An attorney's obligation under Rule 11(b)(3) to conduct a proper prefiling investigation applies not only to the complaint but also to "other paper[s]" filed in the case, such as the October 30 letter at issue in this case. Spalding argues that none of the accused products has a peripheral mass, a limitation that is included in each of the claims of the '279 patent. In addition, Spalding argues that in none of the accused products does the hosel "extend[] into and connect[] with" a portion of a peripheral mass, as required by claim 1 of the '279 patent. Focusing on those two limitations, Spalding argues that Finnegan Henderson is subject to sanctions because the Finnegan Henderson attorneys failed to conduct an adequate investigation to determine if the accused Intimidator metal woods met those limitations before alleging that those clubs infringed claim 1.
 
 
 48
 Most of Spalding's argument seems to be directed at the complaint. However, Spalding notes that the specific charge that the 21 identified Intimidator metal woods infringed claim 1 of the '279 patent was first made in the October 30 letter, and Spalding argued in its sanctions motion and reiterates here that Finnegan Henderson's violation of Rule 11 included the failure to conduct an adequate investigation prior to asserting in the letter that those 21 specified clubs infringed. We therefore conclude that the adequacy of the investigation that preceded the submission of the October 30 letter was encompassed within Spalding's sanctions motion and is properly before us.
 
 
 49
 Finnegan Henderson argues that the district court found that the Spalding products in question all have a peripheral mass, and therefore that it cannot be sanctioned for any investigative lapse in that regard. Finnegan Henderson's argument on that point is mistaken. The district court did not find that the mounting flange in each club constituted the peripheral mass recited by the patent, but accepted Finnegan Henderson's position on that issue merely for purposes of argument. The district court therefore did not decide whether an objectively reasonable attorney would have believed, based on evidence uncovered during Finnegan Henderson's prefiling investigation, that each of the accused products contained a peripheral mass.
 
 
 50
 Finnegan Henderson also contends that it cannot be sanctioned because the complaint did not specifically allege that the Intimidator clubs infringed claim 1 of the '279 patent, and other claims of the patent did not have the "extends into and connects with a portion of said peripheral mass" limitation on which the district court focused. While it is true that the complaint did not specifically refer to claim 1 or the 21 accused metal woods, the October 30 letter did, and Spalding's sanctions motion referred to the allegation of infringement as to the 21 specified metal woods, a charge that appeared in the October 30 letter. Moreover, even if Finnegan Henderson's allegations with respect to other claims in the October 30 letter were well grounded, Finnegan Henderson would not be immunized from sanctions based on the strength of the other allegations of infringement. The "paper-as-a-whole" approach was rejected by the 1993 amendments to Rule 11. See Georgene M. Vairo, Rule 11 Sanctions: Case Law, Perspectives and Preventive Measures 4-117 (2d. ed. 1990 & Supp. 1995). The current version of the rule makes clear that sanctions may be based on a single invalid legal or factual theory, even if other asserted theories are valid. Fed. R. Civ. P. 11(c)(1)(A) (noting that a party may be sanctioned if any "challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected"). Advancing even a single invalid theory forces the defendant to respond and to do work it should not have been required to do. "Each claim takes up the time of the legal system and the opposing side. A single claim . . . may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories." Frantz v. U.S. Powerlifting Fed'n, 836 F.2d 1063, 1067 (7th Cir. 1987). Thus, the district court may properly focus on claim 1 when determining whether Finnegan Henderson failed to perform an adequate investigation before submitting the October 30 letter.
 
 
 51
 To be sure, when a number of different products are charged with infringement it is not always necessary for the plaintiff's attorneys to inspect each product separately to verify the facts on which the plaintiff bases its infringement allegations. At a minimum, however, the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe.
 
 
 52
 In this case, Finnegan Henderson admits that, apart from the single Intimidator driver brought to it by Mr. Antonious, it did not cut open and inspect any of the other Intimidator metal woods before filing suit against Spalding, and that when it submitted the October 30 letter, it still had not cut open and inspected any other of the specifically identified Intimidator metal woods. Thus, the Finnegan Henderson attorneys had no direct knowledge that any of the accused Intimidator metal woods (other than the driver brought to it by Mr. Antonious) met the "extends into and connects with a portion of said peripheral mass" limitation of claim 1, even under Finnegan Henderson's proposed claim construction. Instead, the Finnegan Henderson attorneys inferred that the club heads of each of the other accused Intimidator metal woods had an interior structure similar to that of the driver that they had cut open. On remand, the trial court must decide whether that inference was reasonable, given the other information the Finnegan Henderson attorneys had at the time.
 
 
 53
 In part, Finnegan Henderson based its inference that all of the 20 Intimidator metal woods that it had not cut open met the "extends into and connects with a portion of said peripheral mass" limitation of claim 1 on Mr. Antonious's belief and experience with golf club heads. In its brief, Finnegan Henderson emphasizes that Mr. Antonious looked at several Intimidator metal woods and reviewed all the available Spalding literature. Finnegan Henderson notes that after his inspection of the other Intimidator metal woods, his examination of the single cut-open club head of the Intimidator driver, his comparison of that cut-open club head with his patent claims, and his review of the available literature, Mr. Antonious concluded that all of "the Spalding INTIMIDATOR woods were covered by several claims of my '279 patent, including but not limited to each of independent claims 1, 13, and 56." Other than describing Mr. Antonious as an expert in golf club design, however, Finnegan Henderson does not explain why Mr. Antonious's opinion made it reasonable for the Finnegan Henderson attorneys to conclude that each of the other accused Intimidator metal woods had a hosel that would satisfy the "extends into and connects with a portion of said perimeter mass" limitation of claim 1. That issue will need to be explored on remand.
 
 
 54
 The Finnegan Henderson attorneys also based their inference that the 20 Intimidator metal woods that they had not cut open all satisfied the "extends into and connects with a portion of said perimeter mass" limitation of claim 1 on their review of the literature. At oral argument, Finnegan Henderson pointed to a single sentence from one Spalding advertisement that it claims made it reasonable to infer that the interior structure of all the Intimidator metal woods was similar or identical. That sentence reads, "Top-Flite Intimidator fairway woods use the same titanium insert technology as the drivers." Finnegan Henderson did not point to any additional evidence that would make it reasonable to infer that the interior structures of all the accused golf club heads were identical, other than to say that its searches of the literature found "no results that were inconsistent with" that inference. That issue, too, will require further elaboration on remand.
 
 
 55
 The record is unclear as to whether the Finnegan Henderson attorneys had other evidence on October 30 from which an objectively reasonable attorney would have inferred that each of the accused Intimidator metal woods had a interior structure that infringed claim 1 of the '279 patent as construed by the Finnegan Henderson attorneys. After determining what evidence the Finnegan Henderson attorneys had in their possession on October 30 regarding the structure of the 21 accused Intimidator woods, the district court must determine whether the inference of infringement was objectively reasonable.
 
 V
 
 56
 In sum, to the extent that the district court based its sanctions order on the court's conclusion that Finnegan Henderson's construction of claim 1 of the '279 patent was frivolous, we disagree. With respect to the question of the adequacy of Finnegan Henderson's prefiling factual investigation, the district court did not determine whether the evidence the Finnegan Henderson attorneys had in their possession when the October 30 letter was submitted would have led a reasonable attorney to believe that each of the 21 accused Spalding Intimidator metal woods satisfied the "extends into and connects with a portion of said peripheral mass" limitation in claim 1 of the '279 patent, under the Finnegan Henderson attorneys' construction of that claim language. We therefore vacate the order of the district court and remand for the court to determine whether the Finnegan Henderson investigation was sufficiently thorough that, under Finnegan Henderson's proposed claim construction, its factual conclusions regarding the infringement assertions satisfied the Rule 11(b)(3) prefiling investigation requirement.
 
 
 57
 Each party shall bear its own costs for this appeal.
 
 
 58
 VACATED and REMANDED.