Herbert JUDIN, Plaintiff–Appellee,

v.

The UNITED STATES, Defendant–Appellee,

and

Hewlett–Packard Company, Defendant–Appellant.

No. 96–5050.

United States Court of Appeals, Federal Circuit.

April 3, 1997.

Michael D. Steffensmeier, Porter, Wright, Morris & Arthur, Columbus, Ohio, argued for plaintiff-appellee. With him on the brief were Edwin M. Baranowski, Columbus, Ohio, and Judd L. Kessler, Washington, D.C.

George C. Summerfield, Jr., Rader, Fishman and Grauer, Broomfield Hills, Minnesota, argued for defendant-appellant.

Before ARCHER, Chief Judge, PLAGER and SCHALL, Circuit Judges.

PLAGER, Circuit Judge.

Hewlett–Packard Company ("HP") appeals from a decision of the Court of Federal Claims, 34 Fed. Cl. 483 (1995), denying HP's motion for sanctions under Rule 11, Rules of the Court of Federal Claims ("RCFC"). HP alleged that plaintiff Judin and his attorneys failed to perform a reasonable inquiry prior to filing Judin's patent infringement complaint. Because we find a clear violation of Rule 11, we hold that the trial court abused its discretion in determining otherwise. We vacate the decision of the court and remand the case for further proceedings.

## BACKGROUND

Judin filed a complaint in the Court of Federal Claims (then the Claims Court) on October 23, 1989, alleging infringement by the Government of three of his patents. The complaint was filed by Judin's first attorney of record, Mr. Robert J. Van Der Wall, then a partner at the firm of Dominik, Stein, Saccocio, Colitz & Van Der Wall. The counts based on two of the patents were dropped from the amended complaint on June 8, 1990. The remaining count concerned United States Patent No. 3,656,832 (the "'832 patent"), issued to Judin on April 18, 1972, which pertains to a method of micro-optical imaging. In that count, Judin alleged that, through the use of bar code scanners by the United States Postal Service, the Government infringed the '832 patent.

Claim 1 of the '832 patent, which is representative of the claims asserted by Judin, provides (emphasis added):

1. Method of forming an image having at least one micropoint comprising passing radiation from an *optical fiber source* through an optically uncorrected *converging aspherical lens* and producing a diffraction limited image, said lens being placed about 3 mm or more from the fiber source and the lens having a diameter in the range of 1 to about 3 mm in its major axis.

Sometime prior to the filing of the complaint, Judin observed bar code scanners in use at a post office. He also attended a scanning industry exhibition and was familiar with trade publications, technical specifications, and commercial literature, some of which suggested that Government agencies were purchasing bar code scanners. Judin did not ask the Postal Service for a sample of the device or otherwise try to obtain one.

Judin presented his observations to attorney Van Der Wall, who also observed from a distance the accused devices in use in a post office, but otherwise conducted no investigation. Neither Van Der Wall nor Judin contacted the Postal Service, or any manufacturer, in order to gain access to the accused devices or to inquire about their operation. Van Der Wall relied on Judin with respect to the factual basis of the complaint, believing

that reliance on Judin was reasonable due to Judin's experience, his credentials, and his time in the industry. Van Der Wall stated that he examined one of the asserted patent claims and "saw no problem with it."

Subsequent to the filing of the complaint, Van Der Wall provided to the Government a list of accused infringing products and their manufacturers, presumably based on input from Judin, and solicited procurement records for those products. On April 18, 1990, the Government filed a Motion to Notice Third Parties, asserting that the named corporations, including HP, manufactured or supplied the accused bar code readers to the Government.

During the summer of 1991, Judin consulted with George Wolken, Jr., Ph.D., J.D., a physicist and patent attorney, who analyzed whether the accused devices infringed the '832 patent. Wolken evaluated commercial literature, the patent's file history, and information from Judin's pre-filing inquiry. Based in part on Wolken's analyses, Judin filed an Interim Infringement Analysis on August 27, 1991, and a Final Claims Chart on December 24, 1991.

On November 20, 1991, the trial court allowed Judin's motion to substitute counsel. Thereafter, Judin was represented by Mr. Judd L. Kessler, a member of the firm of Porter, Wright, Morris & Arthur. Mr. Edwin M. Baranowski, also a member of Porter, Wright, Morris & Arthur, was named of counsel to Judin.

On June 30, 1992, a Joint Motion for Partial Summary Judgment on the Issue of Non–Infringement was filed by the Government and HP. In February 1993 the court granted, in part, the motion with respect to certain of the accused devices, the optical communications transmitters and wands. *Judin v. United States,* 27 Fed. Cl. 759, 791 (1993). The court held that, with respect to wands with ball tips and optical communications transmitters, there was no infringement of the '832 patent. With respect to other devices, optical communications receivers, the court held that there was a genuine issue of material fact as to whether they infringed. Judin later stipulated that the Government never purchased any optical communications

receivers from HP. Accordingly, on April 15, 1993, the court ordered HP's dismissal from the suit.

HP thereafter moved for sanctions against Judin, seeking its reasonable expenses incurred in the litigation. Judin filed a cross-motion for sanctions against HP. After oral argument the court denied HP's motion for sanctions. The correctness of that denial is the matter before us on appeal.

In evaluating Judin and his attorney's pre-filing inquiry, the trial court noted that Judin is highly knowledgeable about the field of optical scanners. The court concluded that Van Der Wall's "deference to Mr. Judin [was] understandable with respect to the physics of light scanners and the mechanics of the accused devices." The court found that after viewing the hand-held wand devices in use at the post office, Judin and Van Der Wall knew that the accused devices had a light source, a rounded tip through which the light passed, and that the light was focused in a pinpoint. Judin's investigation had revealed that many Government agencies were using bar code technology, but the court found that the information provided by Judin to Van Der Wall did not include "much useful information," because the "devices were not described in detail."

The court found that, at the time the complaint was filed, Judin and Van Der Wall did not know two important facts: whether the accused devices had a "fiber optic source," or its equivalent; and whether the lens on the devices was "aspherical and converging." The trial court found that Judin did not perform any reverse-engineering of the accused device. The court noted that Judin should have known that these two elements were critical, due to his difficulty in obtaining the patent. The court found that these two claim elements were not present in the accused devices, either literally or under the doctrine of equivalents.

The court also found that Judin "could have been much better informed" before filing the complaint. The court noted that Judin or Van Der Wall could have asked the Postal Service for a device to examine, but failed to do so. Nor does the record indicate

that Judin or his counsel attempted to obtain the device, or a technical description of it, from HP or another vendor. Judin had explained that he did not do this because the scanning devices were made to Government specifications and were not readily available for disassembly because they were in use at Government installations. This explanation for not obtaining, or attempting to obtain, a sample of the accused devices from the Postal Service or a vendor was described by the court as "lame." The court noted that Judin could have purchased a device for a minuscule amount, compared to the cost of the litigation. The court concluded that it was "greatly troubled by the quality of the plaintiff's pre-filing examination, as well as the signing attorney's undue deference to Mr. Judin."

Nevertheless, the trial court considered that knowledge of how the accused devices were constructed would not have made a difference to Judin or his counsel, due to their erroneous assumption of the breadth of the claims in his patent. Judin's erroneous view was reinforced after the fact in 1991 by Dr. Wolken, the court found, when Dr. Wolken advised Judin that a point source of light could reasonably be found to be the substantial equivalent of a fiber optic source of light and that a substantially spherical ball could be the equivalent of an aspherical lens. The court found that this "misconception was translated into a colorable, albeit unsuccessful, response to a motion for summary judgment" on infringement.

The trial court determined that, as a result, although there was a clear lack of literal infringement on a number of claim elements, the court was required to undertake a lengthy examination on summary judgment to determine that there was no infringement under the doctrine of equivalents. Accordingly, said the court, the arguments it rejected on summary judgment were not "uniformly frivolous." The court was of the view that a more thoughtful pre-filing examination would not likely have deterred Judin's interest in the suit. The court thus concluded that Judin's pre-filing examination was "minimal," but not sanctionable.

As regards counsel's conduct, the court noted that Van Der Wall had a duty to analyze the patent claims and determine whether Judin's assertions were plausible. The attorney had the obligation to satisfy himself that a proper construction of the claims, in light of the facts brought to him by the client, permits argument that each element of the claims appears in the accused devices. Based on Van Der Wall's statement that he had examined the claims and found them to be colorable, the court concluded that Van Der Wall's conduct also was "minimally sufficient to preclude sanctions."

As for Judin's two other attorneys, the court noted that although they did not file either the original or amended complaints, Rule 11 also establishes obligations with respect to other filings, such as filings made in connection with the motion for summary judgment. The court concluded, however, that because it declined to order sanctions in connection with the initial filings, it would be inconsistent for the court to order sanctions in connection with the later filings.

As for Judin's cross-motion for sanctions under Rule 11, the court found that Judin's motion was "totally groundless." Accordingly, the court found that Judin's motion itself was so frivolous as to fail to satisfy the requirements of Rule 11. The court ordered Judin to pay HP for the reasonable cost ($500) of defending itself against the motion.

## DISCUSSION

Rule 11, RCFC, which is patterned after Rule 11, Fed.R.Civ.P., provides that every pleading filed by a party shall be signed by the party's attorney.[1] The rule also provides:

The signature of an attorney or party constitutes a certificate by the attorney or party that ... to the best of the attorney's or party's knowledge, information and belief formed *after reasonable inquiry* it is *well grounded in fact* and is warranted by

1. Rule 11, RCFC, is patterned after the 1983 version of Rule 11, Fed.R.Civ.P. We express no view as to whether the outcome of this case would be different if the rule had been patterned after the 1993 version of Rule 11, Fed.R.Civ.P.

existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall impose* upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay ... a reasonable attorney's fee.

Rule 11, RCFC (emphasis added).

In interpreting Rule 11, RCFC, "[p]recedent illuminating [Rule 11, Fed.R.Civ.P.] is applicable." *Doe v. United States,* 16 Cl.Ct. 412, 414 (1989). In general, a trial court's Rule 11 determinations are reviewed under an abuse-of-discretion standard. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990).

Rule 11 is aimed at curbing baseless filings, which abuse the judicial system and burden courts and parties with needless expense and delay. *Cooter & Gell,* 496 U.S. at 397–98, 110 S.Ct. at 2456–57. Rule 11 was amended in 1983 to provide that courts "shall impose" sanctions if the rule is violated, and the purpose of this mandatory language was to "reduce the reluctance of courts to impose sanctions." *Refac Int'l, Ltd. v. Hitachi, Ltd.,* 921 F.2d 1247, 1257, 16 USPQ2d 1347, 1355 (Fed.Cir.1990). The purpose of imposing Rule 11 sanctions is to deter the misconduct addressed by the rule. *Cooter & Gell,* 496 U.S. at 398, 110 S.Ct. at 2457.

▮ The issue in this case is whether the trial court abused its discretion in determining that Judin and his attorney, before filing the complaint, made reasonable inquiry to determine that the complaint was well grounded in fact. As noted, prior to filing the complaint, Judin and Van Der Wall observed an accused device from a distance while it was in use at a post office, but neither Judin nor his attorney attempted to obtain a device from the Postal Service or the manufacturer so that they could more closely observe the device, nor was any attempt made to dissect or "reverse-engineer" a sample device.

▮ Attorney Van Der Wall reviewed one of the asserted patent claims and stated that he "saw no problem with it." "Determining infringement, however, requires that the patent claims be interpreted and that the claims be found to read on the accused devices." *S. Bravo Systems, Inc. v. Containment Technologies Corp.,* 96 F.3d 1372, 1375, 40 USPQ2d 1140, 1143 (Fed.Cir.1996). As in *S. Bravo Systems,* there is no evidence that Judin or his attorneys "compared the accused devices with the patent claims" prior to filing the complaint. *See id.* (holding that trial court abused its discretion by denying a motion for Rule 11 sanctions without adequate explanation).

By viewing the accused devices at a distance Judin was able to determine that they had a light source and a rounded tip through which the light passed, and that the light was focused in a pinpoint. That may have been sufficient to put Judin on inquiry about whether the Government was using a device that infringed his patent. But Rule 11 requires more. It requires that the inquiry be undertaken *before* the suit is filed, not after. Defendants have no choice when served with a complaint if they wish to avoid a default. They must undertake a defense, and that necessarily involves costs. Rule 11 prohibits imposing those costs upon a defendant absent a basis, well-grounded in fact, for bringing the suit.

▮ In this case, prior to the filing of the suit, neither Judin or his counsel had made a reasonable effort to ascertain whether the accused devices satisfied the two key claim limitations, either literally or under the doctrine of equivalents. No adequate explanation was offered for why they failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent. Under these circumstances, there is no doubt that Judin failed to meet the minimum standards imposed by Rule 11, and his attorney acted unreasonably in giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney. The trial court's determination to the contrary is an abuse of its discretion. *Cf.*

*Refac Int'l, Ltd. v. Hitachi, Ltd.,* 141 F.R.D. 281, 286–88, 19 USPQ2d 1855, 1857–59 (C.D.Cal.1991) (imposing Rule 11 sanctions on patent infringement plaintiff that failed to reverse engineer or examine accused products prior to filing complaint). Because Rule 11 is not about after-the-fact investigation, Judin and Van Der Wall's violation of Rule 11 was not cured by the fact that, after filing the complaint, Judin consulted with an expert and was able to make "colorable" arguments in response to a motion for summary judgment of noninfringement.

■ Rule 11 requires the court to impose "an appropriate sanction" for a pleading filed in violation of the rule, "upon the person who signed it, a represented party, or both." For a party represented by an attorney, the "person who signed" the pleading refers to the individual attorney who signed the pleading, not the attorney's firm. *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). In imposing Rule 11 sanctions, a court may allocate sanctions between an attorney and client according to their relative fault. *Borowski v. DePuy,* 850 F.2d 297, 305 (7th Cir.1988). Attorneys are usually held solely responsible for Rule 11 sanctions when the filing violating Rule 11 is unwarranted by existing law, or a good faith argument for extension, modification, or reversal of existing law. *Id.* However, an attorney and client may be held jointly and severally liable for filings that are not well grounded in fact. *Allen v. Utley,* 129 F.R.D. 1, 9 (D.D.C.1990).

On the record before us, we would have no hesitancy to impose on Mr. Judin and Mr. Van Der Wall, as a Rule 11 sanction in favor of HP, "the amount of the reasonable expenses incurred because of the filing of the [complaint], including a reasonable attorney's fee." Rule 11, RCFC. Further, even though Mr. Van Der Wall was not Mr. Judin's attorney of record for this Rule 11 proceeding, the record indicates that: Mr. Van Der Wall appeared at the Rule 11 sanctions hearing before the trial court; he filed an affidavit relating to HP's motion for sanctions; and he was served with the brief and related papers filed by Judin in this appeal.

Nevertheless, because determining what sanction to impose for a Rule 11 violation initially is a matter within the discretion of the trial court, we remand the case to the trial court for a determination of an appropriate sanction, and to determine whether in the interest of justice a further opportunity to be heard need be accorded to Mr. Van Der Wall.

■ As for the two other attorneys who represented Mr. Judin after Mr. Van Der Wall, the trial court declined to impose sanctions on them in order to avoid being inconsistent with its decision not to impose sanctions with respect to the filing of the complaint. In view of our ruling to vacate the decision with respect to the complaint, on remand the trial court should reconsider its decision with respect to later filings made by the other two attorneys. The court should consider that "reliance on forwarding co-counsel may in certain circumstances satisfy an attorney's duty of reasonable inquiry[,] ... [although a]n attorney who signs a pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry." *Unioil, Inc. v. E.F. Hutton & Co.,* 809 F.2d 548, 558 (9th Cir.1987); *see* Fed.R.Civ.P. 11, Advisory Committee Notes to 1983 Amendment.

## CONCLUSION

We vacate the decision of the Court of Federal Claims and remand the case for further proceedings consistent with this opinion.

## COSTS

Costs to be assessed against Judin.

*VACATED and REMANDED.*