# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01291-COA

MARK D. HERBERT

APPELLANT/
CROSS-APPELLEE

v.

NINA L. HERBERT

APPELLEE/
CROSS-APPELLANT

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2021 |
| TRIAL JUDGE: | HON. M. BRADLEY MILLS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK D. HERBERT |
| ATTORNEYS FOR APPELLEE: | CRYMES G. PITTMAN |
| | ANN RUSSELL CHANDLER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND REMANDED - 04/25/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1.    Mark Herbert sued Nina Herbert, his estranged wife, for six different causes of action after she decided to leave him and terminate their marriage. She later filed for and obtained a divorce. She moved for summary judgment on each of the torts Mark claimed she committed and for attorney's fees. The trial court granted summary judgment in her favor, finding a prenuptial agreement included language that waived all claims against the other, but denied Nina's request for attorney's fees. Finding summary judgment legally appropriate on all claims but for different reasons, we affirm the order granting summary judgment. We

reverse the order denying attorney's fees and remand for a determination of attorney's fees dependent upon which tort claims may be sanctionable.

**FACTS**

¶2.     Two weeks before their marriage, Nina and Mark executed a prenuptial agreement on November 23, 2015. Mark, a practicing attorney, drafted the agreement. Nina was represented by an attorney during the drafting and execution of the prenuptial agreement. The agreement in part reads, "Each party hereby disclaims and releases all and every right, claim, and estate, actual, inchoate, or contingent, and of every kind and character, that he or she might, would, or could have against the other."

¶3.     Mark and Nina Herbert were married on December 1, 2015. Nina left Mark on November 7, 2018, after the couple attended a concert together on November 5, 2018. The couple had a disagreement at the concert that resulted in Nina screaming at Mark, calling him a motherf***** and flipping her middle finger at him. Nina asserted that she left the marriage "because she feared Mark." Shortly after their separation, Mark sent the following text message to Nina on November 10, 2018, "I will never, ever agree to an uncontested divorce. Never. You do not have the grounds for a contested divorce. I will fight against that with every fiber of my being. **You will face at least two years of pain and embarrassment**. . . . And remember we signed a prenuptial agreement. **You are exposing yourself to serious financial issues**." (Emphasis added).[1]

¶4.     Mark filed this civil action on October 31, 2019, in the Madison County Circuit Court.

---

[1] This text message was attached to Nina's motion for summary judgment as "Exhibit B."

Mark alleged six causes of action against Nina: (1) intentional infliction of emotional distress, (2) verbal assault, (3) conversion, (4) fraudulent misrepresentation, (5) defamation and slander, and (6) breach of contract. The underlying facts for each claim will be addressed in the analysis section for each cause of action.

¶5.     Nina filed for divorce in South Carolina on December 5, 2019. Incident to the divorce proceeding, Nina filed an affidavit detailing her grounds for divorce. Mark was represented by an attorney in the South Carolina divorce proceedings. According to the final order of divorce, Mark did not object to the court's order granting an agreed order of divorce. Nina's affidavit filed in the South Carolina divorce proceeding forms the basis for some of Mark's claims in this lawsuit.

¶6.     On September 23, 2020, following unsuccessful mediation attempts, Nina filed a motion to dismiss this action or, in the alternative, for summary judgment, attorney's fees, and costs (hereafter referred to as the motion for summary judgment). At a November 4, 2020 hearing, the circuit court granted the motion, finding that all claims in the complaint were waived by the parties' prenuptial agreement. The circuit court entered its order on December 10, 2020.

¶7.     On December 21, 2020, Nina filed a motion for attorney's fees and costs, which was heard on September 8, 2021, by a new judge because the previous judge was appointed to the Mississippi Court of Appeals. The circuit court entered an order denying the motion on September 29, 2021. On October 7, 2021, Nina filed a motion to alter or amend the order to prevent manifest injustice and to make findings of fact and conclusions of law. On November

3, 2021, the circuit court denied Nina's motion. Mark appealed the grant of summary judgment, and Nina filed a cross-appeal regarding the order denying attorney's fees.

## STANDARD OF REVIEW

¶8. "Under Rule 12(b)(6), [when] matters outside the pleading are presented to and not excluded by the court, a motion to dismiss must be treated as one for summary judgment." *Chalk v. Bertholf*, 980 So. 2d 290, 294 (¶7) (Miss. Ct. App. 2007). This Court conducts a de novo review of a trial court's decision to grant a motion for summary judgment. *Strausbaugh v. Lumpkin*, 282 So. 3d 445, 446 (¶2) (Miss. Ct. App. 2019). The Mississippi Supreme Court has held the non-moving party "must rebut the motion for summary judgment by producing **significant probative evidence**." *Foster v. Noel*, 715 So. 2d 174, 180 (¶35) (Miss. 1998) (emphasis added) (quoting *McMichael v. Nu-Way Steel & Supply Inc.*, 563 So. 2d 1371, 1375 (Miss. 1990)). The trial court is not the trier of fact at the summary judgment phase but only determines whether the information provided by the nonmoving party creates a genuine issue of material fact on an essential element. *Mantachie Nat. Case Dist. v. Miss. Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992). "[T]he content of summary-judgment evidence must be admissible at trial although the evidence may be in a form, such as an affidavit, that would not be admissible." *Ill. Cent. R.R. Co. v. Jackson*, 179 So. 3d 1037, 1043 (¶14) (Miss. 2015).

## ANALYSIS

### I. Defenses of Release or Waiver

¶9. As previously stated, the parties had entered into a prenuptial agreement on November 23, 2015. The prenuptial agreement contained broad language where each party waived all

claims toward the other. Paragraph seven of the prenuptial agreement read as follows:

> Waiver of Rights Against Spouse and Spouse's Separate Property. Each party hereby **disclaims and releases** all and every right, claim, and estate, actual, inchoate, or contingent, and of every kind and character, that he or she might, would, or could have against the other. . . .

(Emphasis added). Nina did not refer to the prenuptial agreement in her answer to the complaint, nor did she raise the affirmative defense of release. However, Nina did attach the prenuptial as an exhibit to her motion for summary judgment. On November 4, 2020, the circuit court heard the motion. Mark argued that Mississippi Rule of Civil Procedure 8(c) requires a court to deem an affirmative defense waived if a party fails to raise it in the answer.

¶10. The trial court found that the prenuptial agreement was "outside of the original pleadings," and the court, therefore, would consider the motion to dismiss as one for summary judgment. The circuit judge held that paragraph seven of the prenuptial agreement was indeed a waiver, holding, "I find that this agreement, in several places but specifically in paragraph seven, is broad enough to cover any claims that either spouse might have against each other arising during the course of the marriage."

¶11. On appeal, Mark argues that under Mississippi Rule of Civil Procedure Rule 8, Nina waived the defense of release by failing to raise it in her answer. Mississippi Rule of Civil Procedure 8(c) provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, **release**, res judicata, statute of frauds, statute of limitations, **waiver**, and any other matter

constituting an avoidance or affirmative defense.

(Emphasis added).

¶12.    In *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006), the Mississippi Supreme Court clearly held that "a defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." (Footnote omitted).

¶13.    In *Hutzel v. City of Jackson*, 33 So. 3d 1116, 1119 (¶12) (Miss. 2010), the Mississippi Supreme Court once again interpreted Rule 8(c). Hutzel sued the City of Jackson and Hemphill Construction alleging that the City's actions in improving a segment of road on which Homer's Barbecue was located negatively impacted the restaurant. *Id.* The restaurant argued it had "suffered financially and eventually was forced to close its doors because of lost revenues." *Id.* at 1118 (¶5). Hutzel argued these actions were "tantamount to an unconstitutional taking, negligence, nuisance, and trespass." *Id.* at (¶6). The City filed its answer in February 2003. *Id.* Two years later, the City filed a motion for leave to amend its initial answer to "include the affirmative defenses of release and accord and satisfaction." *Id.* at (¶7). Hutzel objected to the motion and argued that because the City failed to plead the defenses in compliance with Rule 8(c), the City had waived them. *Id.* The trial court granted the City leave to amend the complaint. *Id.* at (¶8). The City then filed a motion for summary judgment, which the court granted. *Id.* Hutzel appealed from that order. *Id.* On appeal, the Mississippi Supreme Court held, "[I]f a party fails to raise an affirmative defense in its

6

original answer, the defense will be deemed waived." *Id.* at 1119 (¶12). The Court explained, "This rule aids in this Court's effort to ensure judicial efficiency and the expeditious resolution of disputes. Moreover, this approach gives parties incentive to be more diligent in submitting defenses." *Id.* (citations and internal quotation marks omitted).

¶14.    As recently as October 20, 2022, in *Pruitt ex rel. Brooks v. Sargent*, 349 So. 3d 729, 731 (¶5) (Miss. 2022), the Mississippi Supreme Court affirmed the accepted interpretation of Rule 8(c) that if a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived. In *Devine v. Cardinal Health 110 LLC*, 350 So. 3d 1107, 1114 (¶22) (Miss. Ct. App. 2022), this Court explained, "Mississippi Rule of Civil Procedure 8 states that 'in pleading to a preceding pleading, a party **shall** set forth affirmatively fraud or other affirmative defenses.'" (quoting M.R.C.P. 8(c)). "A party's failure to raise an affirmative defense in his or her answer constitutes a waiver of that defense." *Id.*

¶15.    In the present case, it is without dispute that Nina did not include either "release" or "waiver" as an affirmative defense in her answer. Further, Nina never filed a motion to amend her answer to include such a defense. Nina attached the prenuptial agreement to her motion for summary judgment and argued its application at the hearing. Mark objected at the hearing that the release was not pled and therefore was waived. Pursuant to *Hutzel*, *Horton*, and *Pruitt*, Nina waived the affirmative defense of release or waiver by failing to raise it in her answer.

## II.    Summary Judgment on Tort Claims

¶16.    The circuit court erred in granting the motion for summary judgment based on the

7

ruling that the prenuptial agreement was a release. Nonetheless, "an appellate court conducts a de novo review of a ruling court's decision to grant a motion for summary judgment." *Strausbaugh*, 282 So. 3d at 446 (¶2) (citing *Terry v. Oby T. Rogers PLLC*, 256 So. 3d 1175, 1180 (¶31) (Miss. 2018)). This Court "may affirm the lower court's grant of summary judgment for any sufficient reason apparent from the record." *Robinson v. Holmes County*, 284 So. 3d 730, 734 (¶19) (Miss. 2019) (citing *Cummins v. Goolsby*, 255 So. 3d 1257, 1258-59 (¶8) (Miss. 2018)). "[I]t is well settled that, in the name of judicial economy, an appellate court can affirm the circuit court's judgment if the right result is reached even though for the wrong reason." *Mohead v. State*, 158 So. 3d 358, 360 (¶9) (Miss. Ct. App. 2014). With the understanding that this Court is bound by precedent to conduct a de novo review here, we now turn to examine each claim.

### A.    Intentional Infliction of Emotional Distress

¶17.    In the complaint's first count, Mark asserted a claim of intentional infliction of emotional distress. In the complaint Mark stated, "On or about November 7, 2018, without any notice or warning whatsoever, the [d]efendant left the parties' marriage." Mark alleges that despite his efforts at "reconciliation," Nina has "refused all communication." The complaint continued that since November 7, 2018, the defendant engaged in "numerous intentional actions or communications" that caused "severe emotional distress to the [p]laintiff."[2] In her answer, Nina argued the complaint failed to state a claim upon which

---

[2] In Mark's affidavit attached to his response in opposition to summary judgment, he alleged the following testimony as further "examples of facts" that support his claims for intentional infliction of emotional distress, verbal assault, fraudulent misrepresentation, and defamation and slander: "When I called to tell [Nina] that my mother, to whom she was

relief could be granted.

¶18. To prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove

> [(1)] [t]he defendant acted **willfully or wantonly towards the plaintiff** by committing certain described actions; [(2)] the **defendant's acts are ones** "which **evoke outrage or revulsion in civilized society**"; [(3)] the acts were directed at, or intended to cause harm to, the plaintiff; [(4)] the plaintiff "suffered severe emotional distress as a direct result of the acts of the defendant"; and [(5)] "such resulting emotional distress was foreseeable from the intentional acts of the defendant."

*Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 170-71 (¶41) (Miss. Ct. App. 2021) (emphasis added) (quoting *Rainer v. Wal-Mart Assocs. Inc.*, 119 So. 3d 398, 403 (¶16) (Miss. Ct. App. 2013)).

¶19. Mississippi's standard for a claim of intentional infliction of emotional distress is "very high" and focuses "on the defendant's conduct and not the plaintiff's emotional condition." *Id.* This Court explained in *Croft v. Grand Casino Tunica Inc.*, 910 So. 2d 66, 75 (¶31) (Miss. Ct. App. 2005), that a defendant's conduct must be "wanton and wilful and [such that] it would evoke outrage or revulsion." To prevail on a claim and be entitled to recover damages for intentional inflection of emotional distress, the defendant's conduct must have been "**so outrageous in character**, and **so extreme in degree**, as to go beyond

---

close, had died unexpectedly, she offered no sympathy, but yelled repeatedly and loudly that I had been mean to her and refused to come to [my mother's] funeral because [Nina] was not my wife. We were still married at the time." Nina "intentionally email[ed] me a photograph of my being charged with a BUI," "scream[ed] out in front of gathered people that [I] was a 'motherf*****' and flipped [me] the middle finger," "l[ied] to me [concerning] where she was on November 9, 2018," and "[o]n November 14-18, 2018, remov[ed] property from the couple's joint storage unit and empt[ied] [the] marital home."

9

**all possible bounds of decency**, and to be regarded as atrocious, and **utterly intolerable** in a civilized community." *Id.* *(*emphasis added). Liability does not extend to "**mere insults**, **indignities**, threats, annoyances, petty oppression, or other trivialities." *Id.* (emphasis added) (quoting *Raiola v. Chevron U.S.A. Inc.*, 872 So. 2d 79, 85 (¶23) (Miss. 2004)).

¶20.    In *Little v. Collier*, 759 So. 2d 454 (Miss. Ct. App. 2000), this Court addressed a similar issue. Little brought a claim against his ex-wife, Collier, for intentional infliction of emotional distress after Collier filed a claim against Little for contempt for his failure to pay child support. *Id.* at 455 (¶3). The court held that although the defendant's behavior "was reason for distress," it was not "exhibitions of malicious, intentional, willful, wanton, grossly careless, indifferent or reckless behavior" unwarranted by the facts of the situation. *Id.* at 457 (¶14). The circuit court dismissed the case and imposed sanctions against the plaintiff's attorney for filing a frivolous lawsuit. *Id.* at 456 (¶9). The plaintiff appealed and this Court upheld the circuit court's ruling and imposed double sanctions. *Id.* at 459 (¶23).

¶21.    In *Brent v. Mathis*, 154 So. 3d 842, 843-44 (¶¶1-3) (Miss. 2014), the Mississippi Supreme Court examined an analogous issue when children brought suit against their mother's paramour in an alienation of affection cause of action. The trial court denied the paramour's motion for summary judgment. *Id.* The Mississippi Supreme Court explained in an interlocutory appeal that causing a marriage to end is not sufficient to establish intentional infliction of emotional distress: "looking at elements two and three of the tort, Vennit makes much of the 'destruction' of the Mathis family unit because of the divorce. However, the Court is required to focus its analysis on the defendant's conduct, not the plaintiff's reaction.

'[I]t is the **nature of the act** itself—as opposed to the **seriousness of the consequences**—which gives impetus to legal redress.'" *Id.* at 851 (¶22) (emphasis added) (quoting *Adams v. U.S. Homecrafters Inc.*, 744 So. 2d 736, 742 (¶17) (Miss. 1999)).

¶22.    In the present case, Mark sought to recover damages for intentional infliction of emotional distress from Nina. Mark stated, "Nina has engaged in numerous actions or communications which she either intended to cause severe emotional distress to Mark or which were done by her with willful and total disregard of the impact and emotional distress such actions would cause Mark." But Mark failed to describe the instances that prove Nina's actions were anything more than an adult choosing to leave a relationship. While there was no doubt that Mark was distressed that Nina had decided to leave the marriage, we must focus on the behavior of the defendant, not the "consequences." Mark has failed to show any behavior on Nina's part that is "so extreme in degree, as to go beyond all possible bounds of decency." *See Brown v. Inter-City Fed. Bank*, 738 So. 2d 262, 265 (¶9) (Miss. Ct. App.1999). Assuming Mark's allegations that Nina left "without any notice or warning," refused to go to his mother's funeral, or emailed him when he was "charged with a BUI" are true, none of those actions "go beyond all possible bounds of decency" or "evoke outrage or revulsion in a civilized society." *See id.; accord Croft*, 910 So. 2d at 75 (¶31). Nina's acts stem from ending the marital relationship. While those acts may have caused emotional discomfort to Mark, they are not actionable under a claim of intentional infliction of emotional distress. After a de novo review, we affirm the grant of summary judgment as to Count I because there are no genuine issues as to any material fact that would justify denying the motion for

11

summary judgment. Further, based on the facts alleged, the moving party is entitled to a judgment as a matter of law.

### B. Verbal Assault

¶23. In his complaint, Mark alleged a single event as proof of his verbal assault claim. Mark claimed that on November 5, 2018, the couple attended a concert. "While standing outside in the parking garage for the concert, Nina screamed at Mark in public and in the presence of passersby and called him a motherf*****." Further, Mark alleges that Nina "flipped her middle finger" toward him and that those actions amounted to a "verbal assault." Nina admitted these actions in her answer. In her memorandum in support of her motion for summary judgment, Nina argued verbal assault is not a viable cause of action in Mississippi.

¶24. Mark attached his affidavit to his motion in opposition to summary judgment. He alleged the following as further "examples of facts" which support his claim for verbal assault, as well as several of his other claims: "When I called to tell [Nina] that my mother, to whom she was close, had died unexpectedly, she offered no sympathy, but yelled repeatedly and loudly that I had been mean to her and refused to come to [my mother's] funeral because [Nina] was not my wife. We were still married at the time." Nina "intentionally email[ed] me a photograph of my being charged with a BUI," "scream[ed] out in front of gathered people that [I] was a 'motherf*****' and flipped [me] the middle finger," "l[ied] to me [concerning] where she was on November 9, 2018," and "[o]n November 14-18, 2018, remov[ed] property from the couple's joint storage unit and empt[ied] [the] marital home."

12

¶25. In his memorandum in opposition to summary judgment, Mark argued, "To prevail on a claim for verbal assault, the plaintiff must show an intentional act of using abusive, insulting or offensive words or acts. It must be unreasonable and outrageous to the intended target. The perpetuation must have foreseen that the assault would cause some sort of negative impact." Mark alleged that Nina's assertion that verbal assault is not a cause of action "is incorrect." Mark provided no citation for this definition, no law recognizing verbal assault as a cause of action, and no reasoning as to how Nina was wrong in her assertion.

¶26. Mark relies on *Lyons v. Zales Jewelry Co.*, 246 Miss. 139, 150 So. 2d 154 (1963), to argue that "verbal assault" is a cause of action in Mississippi. *Lyons* was an action for intentional infliction of emotional distress. In *Lyons*, a debt collector called the plaintiff over the telephone in an effort to collect the debt. *Id.* at 144. During the phone call, the debt collector called the plaintiff a damn liar, a g*d*** b****, and threatened to send her to "jail" along with her son, the actual debtor. *Id.* The circuit court sustained the defendant's demurrer. *Id.* On appeal, the Mississippi Supreme Court held the declarations were sufficient to withstand the demurrer and reversed and remanded the case. *Id.*[3]

¶27. Notably, Mark has never alleged that any physical assault occurred. Mark does not

---

[3] This Court examined *Lyons* again in *Weible v. University of Southern Mississippi*, 89 So. 3d 51 (Miss. Ct. App. 2011): a physician brought claims against the university for claimed breach of contract, detrimental reliance, negligent misrepresentation, negligent and intentional infliction of emotional distress, and slander that stemmed from the joint operation of a daycare. *See id.* at 54-55 (¶1). The *Weible* court explained that the actions in *Lyons* are the type of "outrageous conduct" necessary to constitute a claim for intentional infliction of emotional distress. *Id.* at 64-65 (¶41). It is clear from *Lyons* and *Weible* that *Lyons* was a cause of action for intentional infliction of emotional distress. Neither opinion uses the phrase "verbal assault."

allege that Nina made physical contact with him nor that he was "in apprehension of physical contact" by her calling him a "motherf*****" and "flipping him off." It appears from the complaint Mark actually alleged just another claim of intentional infliction of emotional distress. However, instead of including this in his first claim of intentional infliction of emotional distress, he attempted to create or use a different cause of action self-styled "verbal assault." It does not appear that verbal assault has been recognized to exist in Mississippi. The potential erosion of the freedom of expression under the First Amendment to the United States Constitution weighs heavily against recognizing mere insulting words as actionable when the law already has a vehicle for infliction of emotional distress.[4] That law is well established and, in an effort to balance the right to free speech enshrined in the First Amendment with a cause of action based in part on words, requires liability not extend to "**mere insults**, **indignities**, threats, annoyances, petty oppression, or other trivialities." *See Croft*, 910 So. 2d at 75 (¶31) (emphasis added) (quoting *Raiola*, 872 So. 2d at 85 (¶23)). This Court affirms summary judgment as to this claim.

### C. Conversion

¶28. In his complaint, Mark alleged that on November 13, 2018, while he was out of town, Nina appeared at a "jointly owned storage unit in Ridgeland, Mississippi" and proceeded to remove "substantial personal property from the storage unit and take it to an unknown location, without notice to or permission from Mark. . . ." Further, Mark alleged that on

---

[4] The words or action certainly would have to meet the definition of intentional infliction of emotional distress in *Pointer*, 327 So. 3d at 170-71 (¶41), and *Croft*, 910 So. 2d at 75 (¶31).

14

November 14, 2018, Nina went to the parties' residence and removed "personal property," including "substantially all of the furniture, fixtures, art work and kitchen appliances in the residence" and took it "to an unknown location." Mark explained, "Without a detailed inventory of what property [Nina] willfully and without permission removed from the storage unit and the parties' home, Mark cannot determine with precision what Nina has removed."

¶29. In her answer, Nina explained,

> Nina denies that she took any of Mark's property; however she did take property that was hers to another location. Nina admits that she did not give notice or seek permission from Mark. There was no reason to do so since Nina was on the lease of the storage unit and only took personal property that belonged to her . . . . Nina admits that, on November 14, 2018, she went to the marital residence where she had homestead rights but not record title. . . . Nina admits that she caused the lock to be removed on the door to her homestead. This was because Mark had changed the locks to Nina's homestead. Nina admits that she and others removed personal property owned by Nina from the marital residence and moved the property to another location. Nina denies taking any personal property belonging to Mark.

¶30. It is fundamental under Mississippi law that ownership is an essential element of a claim for conversion. *Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 772 (¶10) (Miss. 2004). To establish a case for conversion, "there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Smith v. Franklin Custodian Funds Inc.*, 726 So. 2d 144, 149 (¶20) (Miss. 1998).

¶31. While Mississippi Rule of Civil Procedure 8 eliminated technical forms of pleading, pleadings must "place the opposing party on notice of the claim being asserted." *Est. of Stevens v. Wetzel*, 762 So. 2d 293, 295 (¶11) (Miss. 2000). While no "magic words" are

required in pleadings, it is necessary that the "pleadings provide sufficient notice to the defendant of the claims and grounds upon which relief is sought." *Id.* (citing *Dynasteel Corp. v. Aztec Indus. Inc.*, 611 So. 2d 977, 984 (Miss. 1992)).

¶32. The Mississippi Supreme Court has made clear that "Mississippi is a 'notice pleadings' state," and "fact pleadings are not required." *City of Meridian v. $104,960.00 U.S. Currency*, 231 So. 3d 972, 974-75 (¶9) (Miss. 2017) (citing *Children's Med. Grp. P.A. v. Phillips*, 940 So. 2d 931, 934 (Miss. 2006)). A party to a lawsuit "is not required to plead the specific wrongful conduct." *Id.* At the pleading stage, the rule requires sufficient information to "place the defendant on reasonable notice of the claims" and is a "recognized cause of action." *Id.*

¶33. Mark failed to allege what property Nina wrongfully possesses. Mark's accusation that Nina converted "personal property" is insufficient to provide notice to Nina or apprise the court of the property at issue. Mark makes gross allegations of conversion without identifying the most basic element for a claim of conversion: the property that was converted.[5] Under the standard above, Mark's assertions lack "sufficient factual matter" to make the claim "plausible on its face." *Id.* Without the benefit of even the most basic facts for this claim, this Court cannot draw a legal inference that Nina is liable for the misconduct alleged. Nina is entitled to summary judgment on the claim of conversion.

### D. Fraudulent Misrepresentation

---

[5] Mark seeks an inventory of the property Nina took, but his complaint does not list any details as to the exact property missing. It is inconceivable how Mark could not know which "kitchen appliances," "furniture," or "artworks" of his own are now missing because Nina "took" them.

¶34. In his complaint, Mark alleged Nina "repeatedly told [him] she loved him, was obsessed with him." Further, he alleged that Nina told him that she "loved us" as a couple and that "she wished other couples had the kind of relationship she and Mark had." Mark alleged that based on Nina's "current conduct and her leaving him without notice or warning, these representations now appear to be false, fraudulent and intentionally misleading." As discussed above, Mark attached his affidavit to his response in opposition to summary judgment. In his affidavit, Mark alleged several "additional examples of facts" he claims support his claim for fraudulent misrepresentation. *See supra* note 2.

¶35. In her answer, Nina denied these allegations. In her memorandum in support of her motion for summary judgment, Nina stated she "would not dispute that [Mark] suffers from some form of emotional distress"; however, Mark "alleges no recognized cause of action under Mississippi law for which relief can be granted."

¶36. Mississippi Rule of Civil Procedure 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Further, fraud may not be inferred or presumed. *Brabham v. Brabham*, 483 So. 2d 341, 342 (Miss. 1986). Under Mississippi law, "a plaintiff asserting fraudulent misrepresentation must prove the following elements, by **clear and convincing evidence**: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Elchos v. Haas*, 178 So.

17

3d 1183, 1198 (¶47) (Miss. 2015) (emphasis added). Clear and convincing evidence is the weight of proof that "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, **evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case**." *Johnson v. Bay City S. Mortg. Co.*, 928 So. 2d 888, 892 (¶14) (Miss. Ct. App. 2005) (emphasis added) (quoting *Travelhost Inc. v. Blandford*, 68 F.3d 958, 960 (5th Cir. 1995)).

¶37.    Mark has failed to sufficiently allege any instance of fraudulent misrepresentation with particularity. Mark has also failed to show by clear and confincing evidence that Nina made a false representation that meets the standards stated above in *Elchos*. The complaint made general claims alluding to some of the nine elements of fraud recognized by our courts, but the complaint failed to allege any with particularity. Additionally, the complaint did not even allege actual fraud but merely asserted that in light of the then-current circumstances, the representations "now appear to be false." Although Mark argued these statements "now appear to be false," the mere possibility of fraud can never meet the requirements of pleading with particularity. Further, Mark provides no authority to show that someone telling their spouse, "I love you," could under any circumstances rise to the level of materiality required to sustain a cause of action for fraudulent misrepresentation under Mississippi law.[6] Mark's

---

[6] Essential elements of civil claims are for courts to discern. *See Echols*, 178 So. 3d at 1198 (¶47). The affairs of people's hearts and why they tell others they love them are simply not actionable as fraud without more particularized allegations in the complaint supported by clear and convincing evidence. *See Brabham*, 483 So. 2d at 342; *Johnson*, 928 So. 2d at 892 (¶14).

18

allegations are insufficient to support a claim for fraudulent misrepresentation.

### E. Defamation and Slander

¶38. In his complaint, Mark alleged, "Since November 7, 2018," Nina has "made written and oral statements to others" that falsely accused Mark of "bad conduct and actions." Mark alleged that the "written and oral statements" have been made to his "family and friends . . . or other parties." In his affidavit attached to his response to the motion for summary judgment, Mark further alleged that Nina falsely accused him of abusive behavior, "repeatedly losing [his] temper and slamming doors," and "rude and uncaring behavior toward her about the unfortunate death of [Nina's] three-year-old son," such as telling Nina to "get over it." Further, Mark alleged that Nina communicated to their family and friends that he "had a controlling, combative, and narcissistic nature," lost his temper with Nina "numerous times to the point she feared he would physically harm her," "exhibited a pattern of emotional cruelty and other abusive behaviors," "was very controlling," and constantly wanted to know Nina's whereabouts. Mark alleged Nina stated he once "pushed his chair against the balcony wall stormed upstairs and slammed the door causing [her] to fear for her life," "refused to change the channel on a TV show that featured a drowning person similar to [Nina's] 3-year-old son who unfortunately died by drowning," "acted with extreme cruelty to her during their marriage," and "engaged in abused behaviors during their marriage." In her answer, Nina denied these allegations.

¶39. In *Speed v. Scott*, 787 So. 2d 626 (Miss. 2001), the Mississippi Supreme Court examined the pleading requirements for slander where a fireman brought an action against

the fire chief for allegedly calling him a "liar and a thief." *Id.* at 629 (¶¶9-11). The court held

that recovery for the tort of slander under Mississippi law requires showings: "(a) a false

statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged

publication, i.e., a communication to a third party; (c) negligence or greater fault on part of

publisher; and (d) either actionability of statement irrespective of special harm or existence

of special harm caused by publication." *Id.* at 631 (¶21). The court explained that slander

requires proof of "special harm" unless the statements are actionable per se.[7] Special harm

must be "temporal, material, pecuniary or economic in character." *Id.* at 632 (¶25). The court

held the statements were not slanderous because the fireman failed to allege any harm to his

reputation or pecuniary harm and the words did not constitute defamation per se. *Id.* at 635-

36 (¶¶38-43).

¶40.    This Court analyzed the pleading requirements for a claim of slander in *Chalk v.*

*Bertholf*, 980 So. 2d 290 (Miss. Ct. App. 2007). The case involved a cause of action arising

from statements made on a talk radio show. *Id.* at 292 (¶1). The plaintiffs failed to

"**specifically identify those remarks** or to identify which remark slandered which plaintiff"

and the trial court dismissed the complaint. *Id.* at 295 (¶8). On appeal, this Court upheld the

---

[7] The following are the five categories of slander in Mississippi "for which no special harm need be shown: (1) Words imputing the guilt or commission of some criminal offense involving moral turpitude and infamous punishment. (2) Words imputing the existence of some contagious disease. (3) Words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties thereof. (4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business; and in this and some other jurisdictions [(5)] words imputing to a female a want of chastity." *Speed*, 787 So. 2d at 632 (¶27). Mark has failed to show that the words at issue fit into one of these categories.

dismissal and explained, "Without setting forth any information in the complaint regarding the statements, to **whom the statements were directed**, by whom the statements were made, and **how the statements were slanderous**, the allegation that appellees made 'slanderous statements' constitutes a bare legal conclusion with no support in the complaint." *Id.* at 299 (¶18) (emphasis added).

¶41.    Further, in *RPM Pizza LLC v. Risk & Ins. Consultants Inc.*, No. 1:21-cv-158-LG-BWR, 2021 WL 5234554 (S.D. Miss. Nov. 8, 2021), the United States District Court for the Southern District of Mississippi examined a dispute between a "franchisee of Domino's Pizza" (RPM) and an insurance agency. RPM brought suit for alleged false representations made by the insurance carrier. *Id.* at *1. The insurance carrier countersued for slander and tortious interference. *Id.* RPM filed a motion for summary judgment on the counterclaims, which the court granted. *Id.* The court explained,

> Here, Defendants merely relate the "general topics" of Plaintiff's allegedly slanderous comments. . . . "Mississippi law is well established in holding that in order to bring a claim for defamation, 'the words used must have been clearly directed at the plaintiff and the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.'"

*Id.* at *3 (quoting *Chalk*, 980 So. 2d at 296). The court continued that the insurance carrier dated the slanderous comments only using a broad, eight-month window. *Id.* at *4. The court held the claim for slander was insufficiently pled as it failed to put the plaintiff on notice of "what precisely is at issue in these claims." *Id.*

¶42.    In *Okoloise v. Yost*, 283 So. 3d 49, 59 (¶36) (Miss. 2019), the Mississippi Supreme Court considered a dispute between two physicians. Yost alleged Okoloise slandered him by

21

telling a patient that Yost did not have a license to be treating the patient. *Id.* at 59 (¶36). The chancellor found that as a result of the statement Yost had suffered financial harm. *Id.* at 60 (¶37). The Mississippi Supreme Court reversed the chancellor's holding. *Id.* at 60 (¶38). The supreme court explained,

> Slander is an unusual tort, where mere spoken words become actionable. Everyday life contains risks of sharp words and wounded feelings, but also worse. Brought forward from common law origins is a balancing of the competing interests of one person to speak and another to be free from harm. **Part of the balance struck is to require concrete harm before spoken words are actionable.**

*Id*. (emphasis added) (quoting *Speed*, 787 So. 2d at 632 (¶26)). The Mississippi Supreme Court held to recover for slander, the plaintiff must show "concrete harm" and identify financial harm with evidentiary support. *Id.*

¶43.     In the present case, Mark failed to sufficiently plead his claim for defamation and slander. Mark did not include names of the individuals to whom the statements were directed other than "in affidavits" and to undisclosed friends and family. Further, Mark failed to provide when the statements were made other than any time period "since November 7, 2018," which is insufficient under *RPM Pizza*. Mark's allegations in the complaint are bare legal conclusions with no support. True, Mark's affidavit added additional statements Nina allegedly made about him. However, Mark still did not articulate to whom the statements were made, when the statements were made, and how those statements caused him "concrete harm" or financial harm. In fact, Mark provides no support that there was any "concrete harm" from the slander. We therefore affirm the order granting summary judgment as to the defamation and slander claims.

### F. Breach of Contract

¶44.    In the fourth claim of his complaint, Mark alleged that in the summer of 2018, the couple entered into an agreement regarding the update and eventual sale of Mark's condo and the purchase of another residence. Mark alleged the agreement was as follows: Nina would sell her condo, Mark would give away "much of his furniture," and Nina would provide replacement furniture. Nina and Mark would jointly update Mark's condo with Nina "doing the decorating and supervising of the construction," and Mark would pay the costs. Once the updates were complete, Mark's condo would be sold. Nina would contribute $50,000, which, along with the proceeds, would be used to purchase a new condo. Mark alleged that after Nina left the marriage, she "failed to do any further work on the condo, or contribute the agreed $50,000." Nina denied any such agreement exists.

¶45.    Under Mississippi law, "[t]he elements of a breach of contract are: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or breached it; and (3) that the plaintiff has been thereby damaged monetarily." *Favre Prop. Mgmt. LLC v. Cinque Bambini*, 863 So. 2d 1037, 1044 (¶18) (Miss. Ct. App. 2004). Further, a condition precedent is defined "as a condition which must be performed before the agreement of the parties shall become a binding contract or a condition which must be fulfilled before the duty to perform an existing contract arises." *Denham L. Firm PLLC v. Simmons*, 207 So. 3d 670, 678 (¶29) (Miss. Ct. App. 2017) (citing *Austin v. Carpenter*, 3 So. 3d 147, 149-50 (¶12) (Miss. Ct. App. 2009)).

¶46.    Under Mississippi Code Annotated section 93-3-7 (Rev. 2018), contracts for work and

labor between spouses are void. The statute provides in part, "Husband and wife shall not contract with each other, so as to entitle the one to claim or receive any compensation from the other for work and labor, and any contract between them whereby one shall claim or shall receive compensation from the other for services rendered, shall be void." *Id.*; *accord* Deborah H. Bell, *Bell on Mississippi Family Law* §1.06[1] (3rd ed. 2020).

¶47.    Under Mississippi law, Mark cannot sue Nina under contract law for services between spouses. In his memorandum in opposition to Nina's motion for summary judgment, Mark is clear that "the contract was for services and contribution by the defendant." Any contract for Nina's services is void. Miss. Code Ann. § 93-3-7. As for Nina's contribution, Mark alleged in the complaint that "once the updates were complete Mark's condo would be sold, Nina would contribute $50,000." The completion of the updates on the previous condo, the sale of Mark's condo, and the couple's being in the process of purchasing a new condo were all conditions precedent to Nina's duty to contribute the funds. Because the marriage ended, and none of the conditions precedent ever occurred, Nina never had any duty to contribute the $50,000. The grant of summary judgment is affirmed as to the claim for breach of contract.

### III.    Attorney's Fees

¶48.    In her motion for summary judgment, Nina requested attorney's fees and subsequently filed a motion for attorney's fees and costs. Nina sought an award for attorney's fees pursuant to Mississippi Rule of Civil Procedure 11 and the Mississippi Litigation Accountability Act, Miss. Code Ann. §11-55-1 to -15 (Rev. 2019).

24

¶49. Following the dismissal of the suit, a hearing on Nina's motion for attorney's fees was held before a different judge. The court entered an order denying the motion on September 29, 2021. Nina filed a Motion for Reconsideration or in the alternative, for the court to make findings of fact. The court held,

> The Court notes that Defendant's motion consists of many of the facts and arguments previously made before the Court. Ultimately, the Court finds that Defendant having to pay the cost of her own legal counsel in this Cause does not constitute a manifest injustice. Additionally, Defendant seeks this Court to make findings of fact and conclusions of law supporting its ruling on the Motion. The Court finds that it is not required by MRCP 52, 56 or 59 to issue findings of fact and conclusions of law in this situation and it declines to do so. *See Perkins v. McAdams*, 234 So. 3d 413, 419-20 (Miss. 2017); *Harmon v. Regions Bank*, 961 So. 2d 693 (Miss. 2007).

Mark subsequently appealed the circuit court's dismissal of his claim, and Nina filed a cross-appeal arguing the circuit court abused its discretion by denying attorney's fees.

¶50. In *In re Spencer*, 985 So. 2d 330, 339 (¶19) (Miss. 2008), this Court explained, "The decision to award monetary sanctions under the Litigation Accountability Act is left to the discretion of the trial court." Miss. Code Ann. § 11-55-7. The same is true for sanctions awarded under Rule 11(b) of the Mississippi Rules of Civil Procedure. This Court reviews the judgment of the sanctioning court for abuse of discretion. *Wyssbrod v. Wittjen*, 798 So. 2d 352, 357 (¶17) (Miss. 2001). "In the absence of a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors, the judgment of the court's imposition of sanctions will be affirmed." *Hampton v. Blackmon*, 145 So. 3d 632, 633 (¶7) (Miss. 2014).

¶51. A court may award attorney's fees when "any party files a motion or pleading which,

in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay."

M.R.C.P. 11(b). This Court has stated that a pleading is frivolous "only when, objectively speaking, the pleader or movant has no hope of success." *City of Madison v. Bryan*, 763 So. 2d 162, 168 (Miss. 2000) (quoting *Tricon Metals & Servs. Inc. v. Topp*, 537 So. 2d 1331, 1335 (Miss.1989)).

¶52.    Similarly, the Litigation Accountability Act states that "the court **shall** award . . . reasonable attorney's fees and costs against any party or attorney if the court . . . finds that an attorney or party brought an action . . . that is without **substantial justification**, or . . . was interposed for delay or **harassment.**" Miss. Code Ann. § 11-55-5 (emphasis added). "Without substantial justification" is defined as any claim that is "frivolous, groundless in fact or in law, or vexatious, as determined by the court." *Id.* § 11-55-3(a). "The term 'frivolous' as used in this section takes the same definition as it does under Rule 11: a claim or defense made **without hope of success**." *Smith v. Malouf*, 597 So. 2d 1299, 1303-04 (Miss.1992) (emphasis added); *accord In re Spencer*, 985 So. 2d at 338 (¶26).

¶53.    In *Judin v. United States*, 110 F.3d 780 (Fed. Cir. 1997), the United States Court of Appeals for the Federal Circuit reversed the Court of Federal Claims' denial of attorney's fees under Rule 11 of the Federal Rules of Civil Procedure. Judin filed a complaint alleging the government infringed on three of his patents. *Id.* at 784-85. Before filing the suit, neither Judin nor his attorney made a reasonable effort to ascertain "whether the accused devices satisfied the two key claim limitations." *Id.* The appellate court held that the trial court's determination to the contrary and its failure to award attorney's fees were an abuse of

26

discretion. *Id.*

¶54.　Mississippi Code Annotated section 11-55-7 lists the relevant factors for a court to consider in granting an award of attorney's fees:

> In determining the amount of an award of costs or attorney's fees, the court shall exercise its sound discretion. When granting an award of costs and attorney's fees, the court shall specifically set forth the reasons for such award and shall consider the following factors, among others, in determining whether to assess attorney's fees and costs and the amount to be assessed:
> (a) The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;
> (b) The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;
> (c) The availability of facts to assist in determining the validity of an action, claim or defense;
> (d) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose;
> (e) Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict;
> (f) The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy;
> (g) The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;
> (h) The amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court;
> (i) The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action;
> (j) The extent of any effort made after the commencement of an action to reduce the number of parties in the action; and
> (k) The period of time available to the attorney for the party asserting any defense before such defense was interposed.

¶55.　Under the factors listed above, a substantial portion of this lawsuit was clearly

frivolous. After Nina left the marriage, Mark sent a text message to Nina, which was attached to her motion for summary judgment, telling her, **"You will face at least two years of pain and embarrassment** . . . . And remember we signed a prenuptial agreement. **You are exposing yourself to serious financial issues**." (Emphasis added). It can be argued the present case was commenced to cause some of that "pain and embarrassment" to Nina. Considering the extent to which the party prevailed with respect to the amount and number of claims, Mark asserted six causes of action and succeeded in none. Some claims were clearly frivolous, and some were not even recognized under Mississippi law. All claims failed to plead facts that would survive legal scrutiny.

¶56.    At the hearing on the motion for attorney's fees, counsel for Nina explained, "[T]his lawsuit was filed out of pure spite." After an examination of the record and consideration of the factors above, a portion of this lawsuit appears frivolous. The circuit court abused its discretion by denying in total Nina's motion for attorney's fees. Which claims justify an award of attorney's fees and how much to award are matters for the circuit court to decide. The order denying attorney's fees is reversed, and this case is remanded for a determination of appropriate attorney's fees after the circuit court determines which claims warrant sanctions.

¶57.    Although the trial court erred in granting summary judgment based on the prenuptial agreement, we affirm summary judgment on different grounds. For the reasons stated above, each claim is without merit. Based upon the record, there are no genuine issues of material fact in any claim. The order granting summary judgment is therefore affirmed.

**CONCLUSION**

¶58.   In conclusion, we find that Nina was entitled to summary judgment as a matter of law. Mark failed to establish a genuine issue of material fact on any claim. Further, portions of this lawsuit were entirely frivolous. Mark promised to cause Nina "pain and embarrassment," and this lawsuit was an attempt to do just that. The order granting summary judgment is affirmed. The order denying attorney's fees is reversed, and this case is remanded for a determination of attorney's fees.

¶59.   **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND REMANDED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, McCARTY AND SMITH, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J. EMFINGER, J., NOT PARTICIPATING.**

**CARLTON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶60.   I agree with the majority's decision to affirm the circuit court's grant of summary judgment in favor of Nina. However, I respectfully dissent from the majority's decision to reverse the circuit court's order denying attorney's fees and remand the case.

¶61.   Nina filed a motion seeking attorney's fees pursuant to Mississippi Rule of Civil Procedure 11 and the Mississippi Litigation Accountability Act. After the circuit court denied Nina's motion, she filed a motion for reconsideration. In its order denying reconsideration, the circuit court explained that it denied Nina's motion for attorney's fees because "the [c]ourt finds that [d]efendant having to pay the cost of her own legal counsel

29

in this [c]ause does not constitute a manifest injustice."

¶62. Upon review, the majority finds that based on the factors set forth in section 11-55-7 for the court to consider in awarding attorney's fees, a portion of Mark's lawsuit appears frivolous. The majority accordingly holds that the circuit court abused its discretion by denying Nina's motion for attorney's fees.

¶63. As stated by the majority, we review "a trial court's award of attorney's fees under the Litigation Accountability Act for an abuse of discretion." *Kuhn v. High*, 302 So. 3d 630, 640 (¶26) (Miss. 2020). When reviewing an award of attorney's fees, our supreme court has clarified that "[i]n the absence of a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors, the judgment of the court's imposition of sanctions will be affirmed." *Id*.

¶64. Applying this standard, I find that the circuit court was within its discretion to deny Nina's motion seeking attorney's fees pursuant to Rule 11 and the Litigation Accountability Act. Because I would affirm the circuit court's order denying attorney's fees, I respectfully concur in part and dissent in part.

**McDONALD, J., JOINS THIS OPINION.**